J. FRANKLIN ADAMS, ET AL. *v.* COUNTY COMMIS-
SIONERS OF ST. MARY'S COUNTY

[No. 7, April Term, 1942.]

*Decided May 26, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, and FORSYTHE, JJ.

*John F. Mudd* for the appellant.

*Philip H. Dorsey, Jr.,* and *William O. E. Sterling* for the appellee.

BOND, C. J., delivered the opinion of the Court.

Taxpayers of St. Mary's County filed a bill in equity praying that the county commissioners of the county be enjoined from levying taxes and appropriating public funds for the purpose of aiding in the transportation of school children to and from schools not receiving State aid, and from a denial of the injunction and dismissal of their bill they appeal.

552

An Act of 1939, Chapter 140, under which the commissioners were acting, provided that for every subsequent school year they should levy and appropriate the sum of $10,000 "for the transportation to and from school of children attending schools in St. Mary's County not receiving State aid," and that the amount should "be expended in such manner and on such terms and conditions as the said county commissioners shall determine." The validity of the enactment is attacked on the several grounds: that it is unenforceable because misleading, inconsistent and conflicting with other existing sections of the statute law; that, if otherwise in force, it results in an unconstitutional discrimination against public school children who do not attend consolidated public schools, for whom no buses are provided; and that it is unconstitutional because it authorizes the application of public funds to private purposes.

The schools in the county not receiving State aid are Roman Catholic parochial schools, with about seventeen children attending them to every twenty-two attending public schools; and about 1,300 who attend the parochial schools are carried in thirteen buses belonging to the schools, and 1,400 public school children are carried in twenty-five buses and eight other vehicles provided by the Board of Education at a total cost of $42,500, all of which is met by the State. The contribution by the county to the transportation of parochial school children, it is contended, in addition to aiding and protecting the children when compelled as they are by law, to attend some school, has a public economic advantage in tending to relieve the county of the expense of educating those children in public schools, for which additional buildings, teachers and other equipment must be provided.

The buses used for their children being owned by the parochial schools, the annual public fund to be provided under the Act of 1939 is being distributed under a contract made with the director of each school and one other person, in the proportion of mileage traveled by the several buses, thus paying not all, but only a part of the cost.

Four statutes have been passed to provide for the transportation of those children in the county. An Act of 1933, Chapter 447, adding a Section 202A to Article 19 of the Public Local Laws, 1930, authorized the Board of Education, which conveyed the public school children under the general statute, Code, 1924, Article 77, Section 50, to provide transportation for the children of any school. That Act was expressly repealed by an Act of 1935, Chapter 28, which in another, substituted, Section 202A authorized the county commissioners, in their discretion, to provide for the transportation in buses to be provided by the Board of Education of children attending any school in the county whenever the buses have carrying capacity in excess of that required to transport the public school children. The Act of 1939, Chapter 140, gives the county commissioners the general authority already described, to appropriate the $10,000 each year, and to expend the money in such manner and on such terms as they determine. An Act of 1941, Chapter 609, passed after the institution of the present suit, gave a right to all children attending schools in the county not receiving State aid, and who reside on or along the public highways on which conveyances provided by the Board of Education for public school children move, to transportation in those conveyances on the same terms; and the county commissioners are authorized to provide the funds for this, and for the establishment of new bus routes and for buying new buses, if they and the Board of Education in their discretion deem it desirable. And these last three enactments, all providing for transportation of the same children, but all designated as additional and therefore existing sections of the law, have given rise to questions of reconciliation or repeal of the earlier enactments.

All the statutes other than that of 1939 relate to transportation in buses provided by the Board of Education. The Act of 1939 differs in its authorization to the county commissioners to provide $10,000 for the purpose and to expend the sum as it sees fit, and the preceding Act

of 1935 by its terms authorized them to provide transportation in buses of the Board of Education and the two means thus prescribed for the commissioners may be considered as presenting a conflict in the law if the two enactments co-exist, and the Act of 1939 be taken as "additional" merely. It is plainly the purpose of that Act of 1939, however, to give the commissioners broader authority to accomplish the purpose, and that intention being plain must be allowed to prevail in any conflict, despite the declared co-existence of the two. See *Redmond v. State,* 155 Md. 13, 17, 141 A. 383. "The test of repugnancy in such cases is the practical inquiry whether the two laws can 'stand together and be executed at one and the same time'." *Ruggles v. State,* 120 Md. 553, 559, 87 A. 1080, 1082; *School Commissioners v. Henkel,* 117 Md. 97, 106, 83 A. 89; *State v. Northern Cent. R. R. Co.,* 44 Md. 131, 167.

The later Act of 1941, authorizing the same commissioners to levy and appropriate sufficient funds for transportation in buses provided by the Board of Education, with the requirement that the board shall provide that transportation, presents a more difficult problem. If that statute should be found intended to supersede the provision for the children authorized in the Act of 1939, authority to proceed under the latter Act would have ceased, and the action could be enjoined. *Wade v. St. Mary's Ind. School,* 43 Md. 178, 181; *Steinwedel v. Hilbert,* 149 Md. 121, 126, 131 A. 44; *Green v. State,* 170 Md. 134, 142, 183 A. 526. But this Act of 1941 does not cover exactly the same ground. It gives the children a right to travel in the public school buses, along the regular routes of those buses, and the Act of 1939 is sufficiently broad to authorize the commissioners to provide for transportation of all children of private schools in buses provided from any source. No repeal of this authority is seen in the Act of 1941.

The second objection to the Act of 1939 is that it violates the Fourteenth Amendment of the Constitution of the United States and Section 1 of Article VIII of the

Constitution of Maryland in omitting from the facilities afforded, children of public schools other than the consolidated schools, for which buses are now provided under Article 77, Section 50 of the Code, 1939. That section, the only authority for transportation of public school children, provides that when the public schools of a county are consolidated the Board of Education shall pay when necessary for the transportation of pupils to and from the consolidated schools. The furnishing of transportation to children attending these and to children attending the private schools omits from its benefits children of public schools not consolidated, and this, it is argued, results in an unconstitutional discrimination against them. Section 50 of Article 77, was obviously passed to meet a need arising from removal, in the consolidation, of schools from the former local neighborhoods and the consequent increase of distance to be traveled by some children. There was no unconstitutional discrimination in that enactment against children attending remaining local schools, if any remained, for their need of transportation has not been increased. *State v. Broadbelt,* 89 Md. 565,, 579, 43 A. 771, 45 *L. R. A.* 433, 73 *Am. St. Rep.* 201; *Mogul v. Gaither,* 142 Md. 380, 388, 121 A. 32. And no discrimination can be said to result from the Act of 1939, for it does not appear what if any public school children needing transportation are not supplied with it. Testimony taken shows a practice of disregarding children living near parochial schools, but how their distances may compare with the distances of any omitted public school children we have no means of determining. A classification having some reasonable basis does not offend against the equal protection clause of the Fourteenth Amendment "merely because it is not made with mathematical nicety, or because in practice it results in some inequality." *Wampler v. Le Compte,* 159 Md. 222, 225, 150 A. 455, 457. A similar objection was made in *Board of Education v. Wheat,* 174 Md. 314, 199 A. 628, but was found not well taken.

The more substantial objection, made in the Wheat case in an attack on a different statute, is that the provision for the private school children appropriates public funds for private purposes, in violation of Articles 15 and 23 of the Maryland Declaration of Rights, and the Fourteenth Amendment of the United States Constitution. Under the statute considered in the Wheat case transportation was to be given in buses provided for public school children, and only those entering and leaving along the regular routes of those buses; the provision now sought to be enjoined is a contribution to the parochial schools for transportation in their own buses.

The decision in the Wheat case is not in agreement with decisions of similar questions in other jurisdictions. It is usually held that the furnishing of transportation to children of parochial schools is, as objected, an appropriation of public funds to private purposes. *Judd v. Board of Education*, 278 N. Y. 200, 15 N. E. 2d 576, 118 A. L. R. 789; *State ex rel. Van Straten v. Milquet*, 180 Wis. 109, 192 N. W. 392; *Gurney v. Ferguson*, Okla. Sup., 122 P. 2d 1002; and other cases cited in 174 Md. 322, 199 A. 628. Those courts have construed the aid to have been given to the schools rather than to the children in attending some school, while the view taken in the Wheat case was that it could have been the design of the General Assembly in the statute considered to give aid and protection to the children on the highways, or to facilitate the compulsory attendance at some school, and that the possibility of this design prevented holding the enactment unconstitutional. 174 Md. 322, 323, 325, 199 A. 628. This court still considers that reasoning sound and adheres to the decision on that statute.

But has the present statute authorized the commissioner to turn the money of the taxpayers over to the parochial schools as they are doing? Does the authorization of the Act of 1939 to expend the funds for transportation "in such manner and on such terms and conditions as the said county commissioners shall determine" give them that power? Whatever it does give is

to be strictly construed. *Hanlon v. Levin,* 168 Md. 674, 677, 179 A. 286. In *St. Mary's Industrial School v. Brown,* 45 Md. 310, 335, it was held that while Baltimore City had itself ample power, and the duty, to provide for the foundlings, the insane, and the indigent infirm, "whatever provision may be made must under the control and subject to the supervision of municipal authority. * * * Being an important public trust, it cannot be delegated beyond the power and discretion of those to whom it is confided." It was also held, however, that the city might contract with private agencies to give the care and training which it was the duty of the city to give, and the fact that institutions with which contracts were made were under denominational control did not affect their qualifications for serving as the agencies. And see *Finan v. Cumberland,* 154 Md. 563, 567, 141 A. 269. And in this instance, the commissioners have acted by making a contract with the director of each school and one other individual, and taking a bond for proper performance. This would seem to conform to the holding in *St. Mary's Industrial School v. Brown,* unless subsidizing an existing facility should be differentiated, and we do not see that it can be. Given the validity of any county undertaking to carry the children, joining the schools in doing it would seem equally well founded in principle, and free from objection.

This last consideration seems, too, to support the action against constitutional objections. If the county's carrying the children of parochial schools by any means is a valid action, as we have decided in the Wheat case, one not necessarily to be considered a gift to the schools, the joining with the schools in supporting facilities already provided would seem valid. The decision in the Wheat case that the public funds may be expended to aid the children appears to validate the action questioned in this one.

*Decree affirmed, with costs.*

FORSYTHE, J., dissents.