STATE *ex rel.* MILES HUGHES

*v.*

THE BOARD OF EDUCATION OF THE COUNTY OF KANAWHA, *et al.*

(No. 12887)

*and*

STATE *ex rel.* WILLIAM T. McLAUGHLIN, II

*v.*

THE BOARD OF EDUCATION OF THE COUNTY OF MARION, *et al.*

(No. 12888)

Submitted January 15, 1970.        Decided April 14, 1970.

Dissenting Opinions April 14, May 15, 1970.

*Arthur T. Ciccarello, Angel, Lewis, Ciccarello & Masinter, Maruka & Sansalone, Ross Maruka, Higgins & Gorman, James C. Higgins,* for relators.

*John O. Kizer, Campbell, Love, Woodroe & Kizer,* for respondent Board of Education of Kanawha County, et al.

*Hays Webb, Alfred J. Lemley, Furbee, Amos, Webb & Critchfield,* for respondent Board of Education of Marion County, et al.

CALHOUN, JUDGE:

These cases involve two separate proceedings in mandamus instituted in this Court. On November 3, 1969, the Court granted a rule in each case returnable January 14, 1970. Both cases involve the question of the right of children attending Catholic parochial schools to demand transportation to and from their respective parochial schools on buses owned and operated by county boards of education for the transportation of children who attend the public elementary and secondary schools of the respective counties involved in the two mandamus proceedings.

Inasmuch as the two cases involve substantially identical factual situations and legal questions, they were, by agreement of counsel and by the consent of the Court, combined for purposes of argument and decision.

One of the mandamus proceedings was instituted by Miles Hughes, the petitioner, as a citizen and taxpayer of Kanawha County and as a parent of children of school age, suing in his own behalf and in behalf of all other citizens of Kanawha County who are in like circumstances or similarly situated, against the Board of Education of Kanawha County and Walter F. Snyder, Superintendent of Schools of Kanawha County, as respondents. The petitioner alleges in his petition that he is owner of improved real estate assessed for taxes in Kanawha County; that he and his wife are parents of

two daughters, thirteen and sixteen years of age, respectively; that his two daughters attend Charleston Catholic High School, a Catholic, nonprofit, nonpublic, parochial school situated in the City of Charleston, at a place more than two miles distant from the home in which the petitioner, his wife and two daughters live; that such attendance satisfies compulsory attendance requirements of Article 8 of Chapter 18 of Code, 1931, as amended; that approximately 500 students attend that school; that other similar parochial schools in Kanawha County are attended by approximately 1,400 students; that the school attended by the petitioner's daughters is operated generally according to the rules, regulations and requirements of the respondent board of education with reference to textbooks, curriculum and hours and days of operation; that the respondent board of education maintains at public expense a bus transportation system, not for all children of school age pursuant to the provisions of Code, 1931, 18-5-13(6), as amended, but, on the contrary, only for the benefit of children who attend the public schools of Kanawha County; that the respondents, acting through Walter F. Snyder, as county superintendent of schools, have refused, upon proper demand, to provide transportation at public expense for any students attending parochial schools in the county; that the respondents have a mandatory duty to provide bus transportation at public expense for all children of school age who attend schools within the county; that the respondents have arbitrarily and capriciously refused, in the circumstances, to perform their duties as required by the provisions of Code, 1931, 8-5-13(6), as amended; that such refusal constitutes a denial of equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States and Article III, Section 10 of the Constitution of West Virginia; that the respondents' refusal to comply with their mandatory duty results in a denial to parochial school students of the benefits of the safety facilities provided by law for transportation of children in school buses maintained and operated by the respondent board of education; that such refusal discriminates against the petitioner, in violation of the First Amendment of the Constitution of the United States and Article III, Section 15 of the Constitution

of West Virginia, because he is exercising his right to utilize the facilities of a Catholic parochial school; and that "Bussing of school children is for their safety, health and welfare, and as such constitutes a public purpose, the same as the safety, health and welfare of all citizens." The prayer of the petition is that the respondents be required to provide transportation at public expense for the petitioner's children and all other children attending nonpublic parochial schools in Kanawha County according to the same rules and regulations as transportation is provided for children attending public schools of the county.

An answer to the mandamus petition was filed in behalf of the respondents in the Kanawha County case previously referred to in this opinion. The answer alleges that the Kanawha County Catholic Area Board of Education operates within the county only one high school, Charleston Catholic High School, but that it operates within the county five elementary schools having an aggregate enrollment of approximately 1,300 students. The answer asserts that the granting of the petitioner's demand would require the respondent board of education "to establish a new, separate bus system with different bus schedules and longer routes operating in much larger areas to accommodate Catholic elementary school pupils"; that, to construe Code, 1931, 18-5-13(6), as amended, in such a manner as to require the respondent board of education to furnish transportation of parochial school students would render that statute violative of the provisions of the First Amendment and the Fourteenth Amendment of the Constitution of the United States and also violative of Article III, Section 15 and Article X, Section 6 of the Constitution of West Virginia. Other material allegations of the answer, we believe, are primarily allegations which deny the validity of legal conclusions alleged in the petition.

The other case involves a mandamus proceeding instituted in this Court by William T. McLaughlin, II, a citizen, resident and taxpayer of Marion County, as petitioner, against the Board of Education of Marion County and T. J. Pearse, Superintendent of Schools of Marion County, as respondents.

The petitioner alleges that he is the parent and natural guardian of three children of school age, being eight, seven and six years of age, respectively; that he is guaranteed by the First Amendment and the Fourteenth Amendment of the Constitution of the United States the right to enroll his children in a nonpublic parochial school; that his three children are enrolled in Fairmont Catholic Grade School in the City of Fairmont, in Marion County, which is a nonpublic, nonprofit, parochial school operated by the Fairmont Catholic School Board, attended by approximately 285 children, which attendance satisfies the compulsory attendance requirements of Article 8 of Chapter 18 of Code, 1931, as amended; that the school is operated generally according to rules, regulations and requirements of the respondent county board of education and the West Virginia Board of Education with regard to textbooks, curriculum and hours and days of operation; that the petitioner, his wife and children live in a home in the City of Fairmont which is more than two miles distant from Fairmont Catholic Grade School; that the respondent board of education maintains and operates at public expense a bus transportation system, not for all children of school age, but rather only for children who attend the public schools of the county; that the Fairmont Catholic School Board, on behalf of parents of children attending Fairmont Catholic Grade School, has made numerous and repeated requests to the respondent board of education to provide bus transportation for children attending Fairmont Catholic Grade School but that such transportation has not been provided for the petitioner's children and other children attending Fairmont Catholic Grade School; that respondents have a mandatory duty to furnish bus transportation for the petitioner's children and all other children of the county of school age; that the respondents, in this respect, have arbitrarily and capriciously refused to perform their duties as required by Code, 1931, 18-5-13(6), as amended; that such refusal by the respondents results in a denial to the petitioner of equal protection of the laws as guaranteed by the Fourteenth Amendment of the Constitution of the United States and by Section 10 of Article III of the Constitution of West Virginia; that such refusal by the

respondents results in a denial to the petitioner of safety regulations afforded to parents and children "using public school bus facilities where the vehicles are operated with specially trained drivers, *distinguished* markings and signal devices and under road laws specifically designed to protect school buses and the children passengers"; that the respondent board of education is discriminating against the petitioner in violation of Section 14 of Article III of the Constitution of West Virginia, because he is exercising his right to utilize the facilities of a nonpublic, parochial school of Catholic religious background; and that bus transportation of school children is for their safety, health and welfare, which constitutes a public purpose. The petitioner, in his mandamus petition, prays that the respondents be required "to provide transportation at public expense for Petitioner's children and all other children attending nonpublic, parochial schools in Marion County, according to the same rules and regulations under which transportation is provided children attending public schools in Marion County."

The respondents in the Marion County case filed an answer to the mandamus petition in which they allege that two Catholic parochial grade schools are operated in Marion County, each serving the entire county, a geographical area far greater than that served by any public school of the county and that to require of the respondents the relief sought by the petitioner would require a new, separate bus system with different schedules; and that the respondents are willing and able to provide education for the petitioner's children in the public schools of Marion County and to provide for them bus transportation while attending public schools on the same basis and subject to the same rules and regulations as are applied to all other residents of the county. The answer asserts essentially the same legal propositions as are urged in the answer of the respondents in the Kanawha County case.

The pleadings in the two cases present no disputed issues of material facts. Both cases present for decision only questions of law which arise primarily from pertinent statutory

and constitutional provisions. The styles of the cases in this Court may induce a belief that the two proceedings were instituted by the State of West Virginia at the relation of Miles Hughes and William T. McLaughlin, II, respectively, whereas the two proceedings actually were instituted by the two individuals as petitioners and, therefore, they will be referred to in this opinion as petitioners rather than as relators.

The two cases were submitted to the Court for decision upon the petitions and answers, upon briefs and oral argument of counsel for the respective parties in the two cases, and also upon an amicus curiae brief in opposition to the prayers of the two mandamus petitions filed, by permission of the Court, by and in behalf of a nonprofit corporation known as Protestants and Other Americans United for Separation of Church and State.

We are of the opinion that the initial question presented for decision involves the application of the language of Code, 1931, 18-5-13(6), as amended, which grants to county boards of education authority:

> "To provide at public expense adequate means of transportation for *all children of school age* who live more than two miles distant from school by the nearest available road * * * ." (Italics supplied.)

The italicized portion of the quotation appearing immediately above is emphasized by counsel for the petitioners. We agree with their contention that the phrase, "all children of school age", is clear and unambiguous. The legislature could have made the provision in question expressly applicable only to children who attend public elementary and secondary schools. We must assume that the legislature acted deliberately and purposely in placing in the statute the language in question in its embracing, unrestricted form.

On January 3, 1969, Honorable C. Donald Robertson, Attorney General of West Virginia, issued a written opinion in which the question of the obligation of county boards of education to furnish at public expense transportation of children attending Catholic parochial schools was thoroughly

and ably discussed. Reference is here made to that opinion and to pertinent statutes, constitutional provisions and appellate court decisions which were therein referred to, discussed and applied. The opinion concludes as follows:

> "In conclusion you are advised that our State statute as it is presently written provides that county boards of education shall have authority to provide 'adequate means of transportation for *all* children of school age.' This means exactly what it says and if a county board of education, under reasonable rules and regulations, provides any transportation at all for students to attend public school, then transportation should be and must legally be provided, under the same rules and regulations, for children to attend parochial schools."

On May 13, 1969, the State Superintendent of Schools directed a memorandum to the county superintendent of schools of every county of the state in which he called attention to the opinion of the attorney general, stating in his memorandum that Honorable Chauncey Browning, Jr., the present attorney general, concurs in the views expressed in the opinion of his predecessor, and stating further in the memorandum: "This opinion appears to be clear and specific."

In the brief filed by the petitioners, it is stated that, commencing with the 1969-70 school term, among the nineteen counties of the state in which parochial schools are operated, Kanawha County and Marion County are the only counties which have not "furnished some degree" of public transportation of children who attend parochial schools.

Chapter 18, Code, 1931, as amended, does not deal solely with public schools and public school children. Section 8 of Article 2 provides that the state board of education shall "prescribe a course of study in fire prevention for use in the public, private and parochial schools of this State, * * * ." Section 18 of Article 2 provides that the state board of education "shall; * * * adopt reasonable rules and regulations governing the establishment, conduct and scope of automobile driver education and automobile driver training for use in the public, private, parochial and denominational

high schools located within this State, * * * . " Section 1 of Article 2C provides for establishment of a job-preparation program for school dropouts on the basis of interest, aptitude and ability for those who drop out before completing high school and makes participation in such program compulsory "for all male youth sixteen and seventeen years of age with the view of later extending it to include the female dropouts falling in the same age bracket." Section 18 of Article 5 provides that a county board of education shall have authority to establish, in connection with the public school system, kindergarten schools or classes "to which may be admitted children between the ages of four and six years." The same statute authorizes the state board of education to prescribe standards for the operation of public kindergarten schools and classes and provides that the standards so prescribed "are also intended to serve as criteria to guide the development of nonpublic kindergarten schools and shall be used for the evaluation and approval of such schools and classes * * * ." Section 9 of Article 2 provides: "In all public, private, parochial and denominational schools located within this State there shall be given prior to the completion of the eighth grade at least one year of instruction in the history of the State of West Virginia. * * * It shall be the duty of the officials or boards having authority over the respective private, parochial and denominational schools to prescribe courses of study for the schools under their control and supervision similar to those required for the public schools." Section 21b of Article 5 provides that a county board of education, upon application of the proper authorities "of any private school," may provide state-adopted textbooks for use of pupils enrolled therein "whose parents, in the judgment of the board, are unable to provide same."

Being of the opinion that the phrase, "all children of school age," is embracive, unrestricted, clear and unambiguous, we are not at liberty to undertake to construe that statutory language or to seek to read into it a meaning, restriction or legislative intent not therein expressed. Our duty is to apply this statutory language according to the legislative intent therein clearly expressed. *Dunlap v. State*

*Compensation Director,* 149 W.Va. 266, 140 S.E.2d 448; *State ex rel. Fox v. The Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield,* 148 W.Va. 369, 135 S.E.2d 262.

It is asserted in behalf of the respondents that Code, 1931, 18-5-13, as amended, merely provides that a county board of education "shall have authority" to provide at public expense adequate means of transportation for all children of school age, and that the county boards of education are thereby clothed with a right to exercise a discretion and are not charged with a mandatory duty. The answer to this contention is that the county board of education in each of the two counties has already exercised that discretionary right by providing bus transportation at public expense. Having exercised that discretion affirmatively, the respondents are not at liberty arbitrarily or capriciously to discriminate among children of school age.

While we regard the statutory provision contained in Code, 1931, 18-5-13(6), as amended, as clear and unambiguous and, therefore, not subject to judicial construction, we are required in these cases to determine whether certain constitutional provisions, when properly construed and applied, render the statutory provision unconstitutional. In this connection, we are mindful of our responsibility as a court, in recognition of the principle of the separation of powers in government, to seek to avoid an adjudication of unconstitutionality. We are required to assume that the legislature, in enacting the statute, intended not to violate any constitutional provision. 16 C.J.S., *Constitutional Law,* Section 100, page 277; *State ex rel. Heck's, Inc. v. Gates,* 149 W.Va. 421, pt. 8 syl., 141 S.E.2d 369; *State ex rel. Rickey v. Sims,* 122 W.Va. 29, 32, 7 S.E.2d 54, 56.

The obligation of a court, and the restriction upon the power and authority of a court in this area, were summarized in the first point of the syllabus of *State ex rel. Appalachian Power Company v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351, as follows:

"In considering the constitutionality of a legislative enactment, courts must exercise due restraint,

in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt."

See also *State ex rel. The West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545; *State ex rel. Metz v. Bailey*, 152 W.Va. 53, 159 S.E.2d 673; 16 AM. JUR. 2d, *Constitutional Law*, Section 172, page 390.

It is important to bear in mind that in these cases we are not dealing with direct or even indirect aid to Catholic parochial schools. We are not concerned in these cases with "all children of school age" as students in Catholic parochial schools. On the contrary, we are concerned in these cases with the rights of children of school age, as citizens, in going to and returning from school. We are concerned with children of school age who are on public sidewalks, streets or highways, in their role as private citizens, in going to and returning from primary or secondary schools in obedience, in most instances, to the stern command of laws pertaining to compulsory school attendance embodied in Article 8 of Chapter 18, Code, 1931, as amended.

By reason of the provisions of Code, 1931, 18-8-2, as amended, the parents of children of school age may be convicted of a criminal offense and may be made subject to fine and imprisonment for failure to require their child or children to obey the compulsory school attendance laws. Under the provisions of Code, 1931, 49-1-4(5), as amended, a child who is habitually truant from school may be adjudged to be a "delinquent child" and dealt with as such.

Code, 1931, 18-8-1, as amended, contains the following provisions relating to compulsory school attendance:

"Compulsory school attendance shall begin with the seventh birthday and continue to the sixteenth birthday.

\* \* \*

"*Exemption A. Instruction in a private, parochial or other approved school.*—Such instruction shall be in a school approved by the county board of education and for a time equal to the school term of the county for the year. In all such schools it shall be the duty of the principal or other person in control, upon the request of the county superintendent of schools, to furnish to the county board of education such information and records as may be required with respect to attendance, instruction, and progress of pupils enrolled between the ages of seven and sixteen years; \* \* \* ."

While the compulsory school attendance statutes relate to children in the designated age range, it is a well-established legal principle that the promotion, at public expense, of education beyond the age of sixteen and even in colleges and universities is regarded as fulfillment of a public purpose, to promote the public welfare, and that expenditure of public funds for such purposes is proper. County boards of education, therefore, are authorized to and actually do provide bus transportation at public expense for children attending public high schools. We are of the opinion, therefore, that essentially the same constitutional questions arise in these cases, whether children transported to primary or secondary schools are above or below the maximum compulsory school attendance age of sixteen.

School buses owned and operated by county boards of education are, in a great measure at least, maintained and operated in order to protect the health, safety and welfare of the students who are transported thereon. Numerous statutes and traffic regulations are designed to afford a special degree of safety to children transported on public school buses. The buses protect the children from all sorts of inclement weather, including rain, snow and sleet. By the system of bus transportation maintained by county boards of education, children are protected, in a great measure,

from many of the dangers incident, in this day, to travel on public streets, sidewalks and highways arising from vehicular traffic hazards and from molestation, personal violence, kidnapping or other harm of a criminal character. We are of the opinion, therefore, that, in these two cases, a denial to parochial school children of all right to the benefit of the facilities of transportation on buses, maintained and operated for the transportation of public school children by the respective county boards of education, denies to the Catholic parochial school children and their parents the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution of the United States.

Our discussion of the case brings us to the point of the application of constitutional provisions relating to religious freedom and separation of church and state. The First Amendment of the Constitution of the United States contains the following provision: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * * ." The constitutional provision quoted immediately above contains, in the disjunctive, a provision known as the Establishment Clause and another provision known as the Free Exercise Clause. 16 Am. Jur. 2d, *Constitutional Law*, Section 339, page 653. These constitutional provisions are made operative and binding upon the states by the provisions of the Fourteenth Amendment. *Everson v. Board of Education of the Township of Ewing,* 330 U.S. 1, 15; *Bond v. Bond,* 144 W.Va. 478, 492, 109 S.E.2d 16, 23.

Article III, Section 15 of the Constitution of West Virginia contains the following provision: "No man shall be compelled to frequent or support any religious worship, place or ministry whatsoever; nor shall any man be enforced, restrained, molested or burthened, in his body or goods, or otherwise suffer, on account of his religious opinions or belief, but all men shall be free to profess, and by argument, to maintain their opinions in matters of religion; and the same shall, in no wise, affect, diminish or enlarge their civil capacities; * * * ." The language quoted immediately above had its

genesis in the Virginia Statute of Religious Freedom, which was authored by Thomas Jefferson. *Bond v. Bond,* 144 W.Va. 478, 492, 109 S.E.2d 16, 23. Pursuant to that provision, this Court has zealously protected the religious freedom of individuals. *State v. Everly,* 150 W.Va. 423, 146 S.E.2d 705; *Bond v. Bond, supra.* In the first point of the syllabus of the *Bond* case, the Court stated: "In a situation involving constitutional rights of religious freedom, the law knows no heresy, and is committed to the support of no dogma."

In recognition of pertinent constitutional guarantees of religious freedom, the legislature of this state has provided that, in counties in which both public and Catholic parochial primary and secondary schools are maintained, parents of Catholic children may elect to have their children attend parochial schools. The statute, we believe, merely expresses a right guaranteed by constitutional provisions.

It is quite true that a Catholic child clearly would be afforded school bus transportation by the mere expedient of electing to attend a public school. We are of the opinion, however, that the denial to children attending Catholic parochial schools of equal rights of bus transportation accorded to children attending public schools deprives Catholic children and their parents of their right of religious freedom in violation of the provisions of the First Amendment of the Constitution of the United States and, even more clearly, in violation of the comprehensive provisions of Section 15 of Article III of the Constitution of West Virginia.

We believe it cannot be asserted plausibly that the provisions of Code, 1931, 18-5-13(6), as amended, when applied to the transportation of children attending Catholic parochial schools, violates the Establishment Clause of the First Amendment of the Constitution of the United States. We concur in the following statement appearing in *Rhoades v. Abington Township School District,* 424 Pa. 202, 208, 226 A.2d 53, 57: "Despite the wondrous flexibility of the English language it is still difficult to see how one can conclude that placing children on a school bus establishes a religion." It would be about as plausible to assert that

the Establishment Clause is violated by furnishing police protection to children while traveling afoot on public streets to or from parochial schools, or by furnishing fire protection or public sanitary sewage facilities for the benefit of Catholic parochial schools.

*Gissy v. Board of Education of Freeman's Creek District*, 105 W.Va. 429, 143 S.E. 111, involved a statute which contained the following provision: "It shall be the duty of the board of education in any district which does not maintain a high school, * * * to pay the tuition fees of all pupils in its district who * * * attend public high schools in other districts or counties, *or other schools of high school grade within the state * * * .*" (Italics supplied.) Gissy was a resident of Freeman's Creek District of Lewis County in which no high school was maintained. His children enrolled in St. Patrick's Parochial School in the City of Weston in Lewis County. A public high school was maintained and operated in the same city. Gissy instituted a mandamus proceeding in the Circuit Court of Lewis County to require the Board of Education of Freeman's Creek District to pay to the parochial school the tuition fees incurred by Gissy's children in attending that school. The judgment of the circuit court in awarding the writ of mandamus prayed for was affirmed by this Court. The discussion of legal principles by this Court in that case is quite pertinent to the questions presented for decision in the instant cases. In its opinion in that case, (105 W.Va. at 432, 143 S.E. at 112), the Court stated: " 'Other schools of high school grade within the state' can have no other meaning than private schools of high school grade, * * * ." At another place in the opinion (105 W.Va. at 433, 143 S.E. at 112-113), the Court stated: "The only limitation is that the school attended shall be a public high school, or other school of high school grade *in the state.* Where an act is expressed in clear and precise terms, as the one under consideration, and the sense is manifest, there can be no reason to substitute a meaning or surmise or guess about it."

We are of the opinion that the transportation of students to and from Catholic parochial schools by bus systems maintained

by county boards of education does not constitute an expenditure of public funds or of school funds for private purposes in violation of Article X, Section 6 of the Constitution of West Virginia. The legislature is clothed with a broad discretion in determining what are public purposes for which public funds may be expended. *State ex rel. The West Virginia Housing Development Fund v. Copenhaver*, 153 W.Va. 636, 171 S.E.2d 545. It cannot be denied that provisions for education of children, or provisions for the promotion of their health, safety and welfare, constitute expenditure of funds for public purposes. While Catholic parochial schools furnish sectarian or religious instruction in addition to instruction in secular subjects, it cannot be gainsaid that such parochial schools make a great contribution to the overall public purpose of promoting the education of children. To this extent, the aims, purposes and efforts of the Catholic parochial schools and of the county boards of education are wholly consistent and harmonious.

The Catholic parochial schools are not permitted to operate apart from and free from regulation by the county boards of education. The parochial schools are required by statute to conform to standards, rules and regulations prescribed for the operation and maintenance of public schools. To the extent that the Catholic parochial schools provide for the secular education of children, the county boards of education, and incidentally the taxpayers, are relieved of a heavy burden they would otherwise be required to bear. It is a matter of common knowledge, we believe, that, in some areas of the nation, Catholic parochial schools, for financial reasons, have been required to cease operation, with the result that crises and almost insuperable burdens have been imposed upon public school systems.

To the extent that Catholic parochial schools bear the burden of providing secular education for children of school age in exchange for a mere transportation of some of the children to and from their parochial schools, the county boards of education are getting a splendid financial bargain. To that extent, the county boards of education are afforded

a financial means of providing a better and more efficient public school system with the funds available to them. It is stated in the brief filed jointly in behalf of the petitioners in these two cases that approximately 13,000 students attend Catholic parochial schools in West Virginia. The brief also cites statutes of twenty-two states which are said to provide for public transportation of children who attend nonpublic schools.

Incidentally, we note that, by reason of statutes enacted in 1968, Code, 1931, 18-22A and 22B, as amended, provide for scholarships and loans to students attending all approved institutions of higher learning in this state, including schools which are maintained and operated privately, by the state and by various religious denominations. Included are Wheeling College, a Catholic school, Davis and Elkins College, a Presbyterian school and West Virginia Wesleyan College, a Methodist school. These statutory provisions have been made, to this extent, for the benefit of private and church schools, and the legislature has provided that recipients of scholarships "shall be free to attend any approved institution of higher learning in this State."

We are of the opinion that the Court's holding in these cases is sustained by the following decisions of appellate courts: *School District of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203; *Cochran v. Louisiana State Board of Education*, 281 U.S. 370; *Bowker v. Baker*, 73 Cal. App. 2d 653, 167 P.2d 256; *Snyder v. Town of Newtown*, 147 Conn. 374, 161 A.2d 770, *appeal dismissed*, 365 U.S. 299; *Rawlings v. Butler*, Ky., 290 S.W.2d 801; *Nichols v. Henry*, 301 Ky. 434, 191 S.W.2d 930; *Squires v. Inhabitants of City of Augusta*, 155 Me. 151, 153 A.2d 80; *Adams v. County Commissioners of St. Mary's County*, 180 Md. 550, 26 A.2d 377; *Board of Education of Baltimore County v. Wheat*, 174 Md. 314, 199 A. 628; *Quinn v. School Committee of Plymouth*, 332 Mass. 410, 125 N.E.2d 410; *Chance v. Mississippi State Textbook Rating and Purchasing Board*, 190 Miss. 453, 200 So. 706; *Everson v. Board of Education of the Township of Ewing*, 133 N.J.L. 350, 44 A.2d 333, *affirmed*, 330 U.S. 1; *Honohan*

*v. Holt,* 17 Ohio Misc. 57, 244 N.E.2d 537; *Rhoades v. School District of Abington Township,* 424 Pa. 202, 226 A.2d 53, *appeal dismissed,* 389 U.S. 11.

The decision of the Court in these cases relates solely to the duties of the respondent county boards of education in relation to Catholic parochial schools. We are not called upon to undertake to decide in these cases other cases of a similar nature which might be presented to the Court for decision hereafter. We are concerned here only with the duty of a county board of education in relation to children whose parents are residents of the county. Conceivably a quite different situation might be presented in relation to a nonpublic school maintained and operated for the benefit of students from other counties of this state or from other states. The instant cases involve only children who are residents of the counties in question and who, therefore, would be entitled to demand public school bus transportation if they should elect to attend public schools of those counties.

We are of the opinion that Code, 1931, 18-5-13(6), as amended, as applied in the instant cases, is not violative of the provisions of the First Amendment or of the Fourteenth Amendment of the Constitution of the United States and is not violative of the provisions of Section 15 of Article III or the provisions of Section 6 of Article X of the Constitution of West Virginia. While counsel for the respondents in the Kanawha County case, in their brief, refer to certain additional provisions of the Constitution of West Virginia relating to the authority of county boards of education to expend public funds, we are of the opinion that the statute in question, as applied in these cases, is not violative of any of such constitutional provisions.

We are of the opinion that the petitioners have established a clear legal right to the relief sought by mandamus in these cases and that the respondents in the two cases, respectively, have a mandatory duty to perform the acts prayed for in the two mandamus proceedings. Mandamus lies to require the discharge by a public officer or public official of a nondiscretionary duty. *State ex rel. The West Virginia Housing*

*Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545; *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W.Va. 479, 153 S.E.2d 284.

For reasons stated in this opinion, a writ of mandamus is awarded as prayed for in each of the two cases.

*Writs awarded.*

BERRY, JUDGE, dissenting:

I dissent from the majority opinion for the simple reason that I do not think the statute providing for transportation of school children at public expense applies to parochial or private schools.

The part of the statute pertaining to this matter, Code, 18-5-13, subsection (6), as amended, reads as follows:

> "(6) To provide at public expense adequate means of transportation for all children of school age who live more than two miles distant from school by the nearest available road and *to provide at public expense and according to such regulations as the board may establish, adequate means of transportation for school children participating in board-approved curricula and extracurricular activities;* and provide in addition thereto, by rules and regulations and within the available revenues, transportation for those within two miles distance * * *." (Emphasis supplied.)

It appears to be clear that under this subsection the boards of education must furnish transportation at public expense to all children of school age who live more than two miles from the school they attend who participate in board-approved curricular and extracurricular activities. Certainly the parochial and private schools in this State do not desire the boards to control and approve all of the curricular and extracurricular activities of their schools because if this was done they would in effect be the same in this respect as public schools. The boards would have the authority to control or approve the activities of such schools, such as all religious

activities, military training and any other related activity including any prayers given in the classrooms.

The entire statute, Code, 18-5-13, as amended, applies to public schools and not to private or parochial schools. It is therefore apparent that the Legislature intended the transportation of school children at public expense to apply only to all public school children.

It was stated by this Court in the case of *Gissy v. Board of Education,* 105 W.Va. 429, 143 S.E. 111, that the State Board of Education had no supervision over schools other than public schools because there was no statute that gave it such power or jurisdiction and if such was the case such schools would scarcely be private. Therefore, if the statute in question is applicable to parochial and private schools it in effect makes them public schools under the supervision of the boards of education in connection with the curricular and extracurricular activities of such schools.

I do not think it was the intention of the statute with regard to transportation of all children of school age to give such regulation or supervision over such schools to the boards, and if this is true the statute applies only to public school children of school age over which the boards have such jurisdiction and not to school children in parochial or private schools.

BROWNING, PRESIDENT, dissenting:

I dissent. I do not disagree with the first point of the syllabus of the opinion of the Court, it having been quoted many times in other opinions of this Court. Actually, it is not a rule of this Court but a reiteration of the constitutional commandment as to the separation of powers of the three branches of government of this State:

> Where the language of a *statute* is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the *statute* according to the legislative intent plainly expressed therein. (Emphasis added.)

The *statute* in question is Chapter 18, entitled "Education," although that is not mentioned in the majority opinion. It is my opinion also that the language of this statute is plain and unambiguous and, that being true, this Court must apply the *statute* according to the legislative intent plainly expressed therein. Although Chapter 18 contains twenty-six articles, scores of sections and subsections, and many thousands of words, the majority selected a few words from one of eleven subsections of Article 5, Section 13, discarded all else pertinent therein, and found those few words "plain and unambiguous." It is true that Subsection 6 of that section states:. "To provide at public expense adequate means of transportation for all children of school age who live more than two miles distant from school . . . ," but the whole chapter is dedicated solely to public education and no one can read it without realizing that the majority has simply taken a few words out of context to give to that subsection a meaning that the legislature never intended.

Article 1 of Chapter 18 is entitled "Definitions; Limitations of Chapter," and this is subsection (e): " 'State superintendent' shall mean the State superintendent of *free* schools." (Emphasis added.) Subsection (g) of Section 1 reads: " 'Teacher' shall mean teacher, supervisor, principal, superintendent, public school librarian or any other person regularly employed for instructional purposes in a *public* school in this State." (Emphasis added.) Article 2 is entitled "State Board of Education," and Section 5 of that article sets forth the duties of the Board:

> Subject to and in conformity with the Constitution and laws of this State, the State board of education shall determine the educational policies of the State, except as to the West Virginia University and Potomac State school, and shall make rules for carrying into effect the laws and policies of the State relating to education, including rules relating to the physical welfare of pupils, the education of feeble-minded and physically disabled or crippled children of school age, school attendance, evening and continuation or part-time day schools, school extension work, the classification of schools, the

issuing of certificates upon credentials, the distribution and care of free textbooks by the county boards of education, the general powers and duties of county boards of education, and of teachers, principals, supervisors and superintendents, and such other matters pertaining *to the public schools of the State* as may seem to the State board to be necessary and expedient. (Emphasis added.)

Article 5 is entitled "County Board of Education" and provides that each school district shall be under the supervision and control of a county board of education. Subsection (2) of Section 9 states that the board shall provide "The necessary furniture, fixtures, apparatus, fuel and all necessary supplies for the schools." Code, 18-5-13, to repeat, is the controversial section and since the majority has not seen fit to do so I shall quote all of the section insofar as it is pertinent:

The boards, subject to the provisions of this chapter and the rules and regulations of the State board, shall have authority:

(1) To control and manage *all* of the schools and school interests for *all* school activities and upon *all* school property, whether owned or leased by the county, including the authority to require that records be kept of *all* receipts and disbursements of *all* funds collected or received by any principal, teacher, student or other person in connection therewith, any programs, activities or other endeavors of any nature operated or carried on by or in the name of the school, or any organization or body directly connected with the school, to audit such records and to conserve such funds, which shall be deemed *quasi-public moneys,* including securing surety bonds by expenditure of board moneys;

(2) To establish schools, from preschool through high school, inclusive of vocational schools; and to establish schools and/or programs for post high school instruction, subject to approval of the State board of education;

(3) To close *any school* which is unnecessary and to assign the pupils thereof *to other schools*: Provided, that such closing shall be officially acted upon

and teachers and service personnel involved notified on or before the first Monday in May, in the same manner as provided in section four [§18-5-4] of this article, except in an emergency, subject to the approval of the State superintendent, or under subdivision (5);

(4) To consolidate schools;

(5) To close *any elementary school* whose average daily attendance falls below twenty pupils for two months in succession, and send the pupils to other schools in the district or to schools in adjoining districts. If the teachers in the schools so closed are not transferred or reassigned to other schools, they shall receive one month's salary;

(6) *To provide at public expense* adequate means of transportation for *all* children of school age who live more than two miles distant from school by the nearest available road *and* to provide *at public expense* and according to such regulations as the board may establish, adequate means of transportation for school children participating in board-approved curricular and extracurricular activities; and provide in addition thereto, by rules and regulations and within the available revenues, transportation for those within two miles distance: Provided, that in all cases the buses or other transportation facilities owned by the board of education shall be driven or operated only by drivers regularly employed by the board of education: Provided, however, that buses shall be used for extracurricular activities as herein provided only when the insurance provided for by this section shall have been effected;

(7) *To provide at public expense* for insurance against the negligence of the drivers of school buses, trucks, or other vehicles operated by the board; and if the transportation of pupils be let out to contract, then the contract therefor shall provide that the contractor shall carry insurance against negligence in such an amount as the board shall specify;

(8) To employ and to provide in-service training for teacher aides, the training to be in accordance with rules and regulations of the State board;

(9) To establish and conduct a self-supporting dormitory for the accommodation of the pupils

attending a high school or participating in a post high school program and of persons employed to teach therein;

(10) The board shall be authorized *to provide at public expense,* adequate public liability insurance;

\* \* \*

The board of any district shall expend under such regulations as it establishes for each child an amount *not to exceed the proportion of all school funds of the district that each child would be entitled to receive if all the funds were distributed equally among all the children of school age in the district upon a per capita basis.* (Emphasis added.)

\* \* \*

As observed by Judge Berry in his able dissent, if the majority has found Subsection 6 clear and unambiguous surely the other subsections are just as clear and unambiguous. If so, that means that a board of education "may close any school" which is unnecessary and assign the pupils thereof to other schools. Does this include parochial and other private schools? It has the power without any limiting language "to consolidate schools." May it consolidate parochial schools or consolidate a parochial and a public school? The other powers given in that subsection do not have the magic limiting words "free" or "public."

It has been alleged and not denied that if writs were granted in these cases it would be necessary to rearrange bus schedules, perhaps purchase new buses, hire extra drivers, mechanics, etc., and that all of those expenses would be borne by the taxpayers. It will be noted that W. Va. Const., art. XII, § 4, created the "Existing Permanent and Invested School Fund," the interest of which was to be "annually applied to the support of *free* schools throughout the State, and to *no other purpose whatever.*" (Emphasis added.) "The Irreducible School Fund Amendment" amended this section, ordering that the fund be "paid into the treasury to the credit of the general school fund for the support of the *free* schools of the State." (Emphasis added.)

And, as Judge Haymond of the majority in this case said in *Bd. of Educ. of Wyoming County v. Bd. of Public Works*, 144 W.Va. 593, 109 S.E.2d 552, "Article XII, Section 4 of the Constitution of this State as modified by the Irreducible School Fund Amendment, establishes the general school fund for the support of the *free* schools of this State." (Emphasis added.) "Free" schools, of course, are not parochial or private schools. Are not the respondent county boards of education funded by the general school fund? Would not the providing of transportation by these Boards for the "Catholic parochial schools" be in violation of the state constitution and previous decisions of this Court? We must look further, however. Code, 18-9-6, as amended, provides for the general school fund "set apart for the support of the *free* schools of the State . . . ." (Emphasis added.) Article 9A concerns "Allocation of State Aid for Schools." What kind of "schools"? Section 1, entitled "Public school support program," answered by saying, "The intent of this article is to provide a plan of financial support for the *public* schools of the State . . . ." (Emphasis added.) Subsection 1 says that one of the purposes the legislature had in mind in enacting this plan is "[t]o provide a basic foundation support for the *free* schools of the State that will assure a minimum educational base for *all* children and youth irrespective of where they may live." (Emphasis added.) A lawyer or judge could not find a clearer expression of legislative intent.

The State Board of School Finance was created by Article 9B because, as stated in Section 1, the legislature recognized that "it has become necessary for the State to participate to an increasing degree in the financing of the *free public* schools." (Emphasis added.) By and large, nowhere else in that article did the legislature find it necessary to repeat the phrase "free public schools." On the contrary, from that point on they are referred to only as "schools." By following the majority's "logic" and "reasoning" one must conclude that the other twenty-one sections apply to *all* schools. Article 9C concerns "State aid for repair and construction of public school buildings," and this is expressed in Section 1. Again, that is the last time we see "public schools" referred to.

Thus, we see that the people of this State through its Constitution and Legislature have commanded that the general school fund, comprised of their tax money, is to be used for free schools. It is not within the province of this Court to legislate. To repeat, it is my opinion that the language used in the statute, that is, Chapter 18, when its component parts are read is not ambiguous and that it is evident that when the legislature used the phrase "all children of school age" in Subsection 6 of Section 13 that it clearly meant children who attend public schools. By assuming that the failure to put the word "free" or "public" in front of the word "school" every time that word appeared over and over for more than two hundred pages created an ambiguity then it is clear that the ambiguity is easily resolved and that it was the intent of the legislature to authorize county boards of education to use public tax moneys only for the purpose of transporting children of school age to attend public schools who live more than two miles from such schools.

The majority in this case assumed that the "statute" in question is clear and unambiguous. This was the very issue to be determined in this litigation. To ascertain the meaning of words in any statute, some very basic principles have to be applied, all of which are certainly familiar to the majority. A basic principle apparently ignored here is that a statute is explained from all its parts read together—*ex tota materia emergat resolutio.* We cannot isolate one word of one sentence of one subsection of one section of one article of one chapter of our Code, and make an intelligent determination of its connotation or whether it is ambiguous or "plain and unambiguous." We must look at the entire statute—the chapter on education or at least the section from which the word in question was taken. When we look at the constitutional and the statutory commandments with regard to all school funding by the county and state we can clearly see what the term "school" means when used in statutes regarding education. "School" plainly means "free ( or public) school." This necessarily excludes parochial and all other private schools from the definition—*expressio unius est exclusio alterius.* Another recognized principle, *noscitur a sociis,*

directs that a word is to be interpreted with reference to other words around it, and that words are limited in meaning by implications arising from other words. *Ex Parte James Watson*, 82 W.Va. 201, 95 S.E. 648. In conjunction with this we apply the principle of *ejusdem generis* which also limits general words and phrases where specific words and phrases have been used. The use of "free (or public) schools" in a statute would limit the word "school" to only free (or public) schools when used in other articles and sections. Thus, the majority's interpretation of the isolated phrase "all children of school age" becomes incredible. The legislature could only have meant "all children of school age who attend free (or public) schools." The majority, of course, asks, "Why didn't the legislature write it this way?" The reason is simply that the legislature knew that public money could not be spent for private purposes, and to repeatedly say "public" everytime the word "school" was used would have resulted in ludicrous repetition. The legislature could not foresee that this Court might someday ignore the established rules used in ascertaining the meaning of statutes. I am aware that the aforementioned rules are those associated with statutory interpretation and construction, but they must also be applied to statutes to determine the question of whether words (or statutes) are ambiguous. I also conclude the phrase "all children of school age" is unambiguous, just as did the majority.

By applying to a statute this rule of "plain and unambiguous" indiscriminately a court can read into a statute almost anything that it desires. An example is Chapter 11 of the Code entitled "Taxation." Article 3, Section 1, of that chapter begins thus: "All property shall be assessed annually as of the first day of July at its true and actual value . . . ," for the purpose of taxing such property. That word "all" is spelled exactly the same way it is spelled in 18-5-13 and means exactly the same thing. Therefore, if this Court should stop there in ascertaining the meaning of 11-3-1, that would work a grave hardship upon those owning property affected by 11-3-9 where property belonging to the United States, to this State, property used exclusively for divine worship, etc.,

is exempted from taxation and, of course, the legislative intent is clearly expressed.

Under the provisions of Article X, Section 6, of the Constitution of this State, this Court has held that the legislature is without power to appropriate public funds for other than public purposes. *State ex rel. Adkins v. Sims*, 130 W.Va. 645, 46 S.E.2d 81; *State ex rel. Charleston v. Sims*, 132 W.Va. 826, 54 S.E.2d 729; *State ex rel. Lippert v. Gainer*, 146 W.Va. 840, 122 S.E.2d 618. In *State ex rel. Bd. of Governors v. Sims*, 140 W.Va. 64, 82 S.E.2d 321, this Court clearly and unequivocally held that an appropriation by the legislature of public revenue for a purely private purpose is beyond its power of legislation and for that reason is null and void. In the very recent decision of *State ex rel. County Court of Marion County v. Demus*, 148 W.Va. 398, 135 S.E.2d 352, this Court held that Article X, Section 6, applied to counties and municipalities as well as to the State of West Virginia. Article X, Section 10, of the Constitution of this State begins thus: "Notwithstanding any other provision of the Constitution to the contrary, the maximum rates authorized and allocated by law for tax levies on the several classes of property for the support of *public* schools may be increased in any school district for a period not to exceed five years . . . ." (Emphasis added.) It will be observed in the majority opinion that Article III, Section 15, of the Constitution of this State is quoted in part, but this particular language is not included: ". . . and the legislature shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination." Perhaps this was merely an oversight.

The majority, interestingly enough, says that the providing of this transportation "does not constitute an expenditure of public funds or of school funds for private purposes in violation of Article X, Section 6 of the Constitution of West Virginia." (It is enigmatic indeed why the majority did not here cite or discuss the more pertinent Constitution and Code provisions regarding school funds.) The majority goes on to say, "The legislature is clothed with a broad discretion in

determining what are public purposes for which public funds may be expended." The statement says the *legislature* has this broad discretion, but in this case, this Court is determining what are public purposes, not the legislature. This clearly is not an example of the legislature exercising this "broad discretion," it is the West Virginia Supreme Court of Appeals, by judicial legislation, exercising "broad discretion."

This sentence also appears near the end of the majority opinion: "The decision of the Court in these cases relates solely to the duties of the respondent county boards of education in relation to Catholic parochial schools." Can this Court constitutionally limit the import and effect of the decision in this case to "Catholic parochial schools"? I think not. This is discriminatory toward other parochial schools, *e.g.*, Seventh Day Adventist and Church of the Nazarene schools, both of which exist in this State. If the Episcopalians, Methodists, Presbyterians, etc., instituted schools of primary and secondary education in this State, as they have in other states, should not the respondent boards of education also be compelled to provide transportation to "all children of school age"? This Court cannot ignore the equal protection and due process of law guarantees of the Constitution of the United States and of this State. The same laws and principles which apply to one also apply to others.

The majority attempted to defend their position by engaging in some judicial sophistry. They say that for the mere exchange of transporting parochial school students or, I assume other private school students, by the use of public funds that "county boards of education are getting a splendid financial bargain." My answer is that the majority read Article V, Section 1, the separation of powers provision of the Constitution of this State, *all* of Chapter 18 of the Code, and the aforementioned provisions of the State Constitution, all of which they apparently ignored. Furthermore, continuing their sophisticism, the majority suggests that in a great measure county boards of education maintain and operate school buses in order to protect the "health, safety and welfare of the students who are transported thereon. * * * The

buses protect the children from all sorts of inclement weather, including rain, snow and sleet. By the system of bus transportation maintained by county boards of education, children are protected, in a great measure, from many of the dangers incident, in this day, to travel on public streets, sidewalks and highways arising from vehicular traffic hazards and from molestation, personal violence, kidnapping or other harm of a criminal character." Not one word can be found with regard to that matter in the chapter on "Education." The reason and only reason for the busing of children attending public schools was the consolidation of schools and a casual reading of the chapter will prove that. Furthermore, if all of the hazards that the majority are worried about are reasons for busing students who attend private schools, why has not the legislature provided that even public school students must be transported by bus if they live less than two miles from the school they attend? Are there no hazards in that two-mile journey?

It is interesting to note the following language of the majority:

> We are of the opinion that the Court's holding in these cases is sustained by the following decisions of appellate courts: * * *.

The majority then cites fourteen cases, *without a discussion of any of these cases or quotations therefrom in support of the majority's position.* Why? A reading of each case discloses that they are all distinguishable from the case at bar in that there is a substantial difference between the constitutional and statutory provisions of the states involved when compared with the applicable Constitutional and Code provisions of this State. It is also interesting to note that other states, when confronted with the issue at bar and with strikingly *similar* statutory or constitutional provisions, or both, have reached a result opposite that of the majority in the instant case. See *Matthews v. Quinton,* 362 P.2d 932 (Alaska), *appeal dismissed,* 368 U.S. 517; *Opinion of the Justices,* 216 A.2d 668 (Del.); *Silver Lake Consolidated School District v. Parker,* 238 Iowa 984, 29 N.W.2d 214; *Sherrard v. Jefferson*

*County Bd. of Educ.*, 294 Ky. 469, 171 S.W.2d 963; *Judd v. Bd. of Educ. of Union Free School District*, 278 N.Y. 200, 15 N.E.2d 576; *Gurney v. Ferguson*, 190 Okla. 254, 122 P.2d 1002, *cert. denied*, 317 U.S. 588, *rehearing denied*, 317 U.S. 707; *Visser v. Nooksack Valley School Dist.*, 33 Wash. 2d 699, 207 P.2d 198; *Mitchell v. Consolidated School Dist.*, 17 Wash. 2d 61, 135 P.2d 79; *State ex rel. Van Straten v. Milquet*, 180 Wis. 109, 192 N.W. 392.

I would deny the writ of mandamus in each of these cases.