GURNEY et al. v. FERGUSON et al.

No. 29754.    Dec. 2, 1941.

Rehearing Denied March 10, 1942.

*122 P. 2d 1002.*

W. F. Wilson, Mont F. Highley, T. K. Quillin, W. F. Wilson, Jr., Mont F. Highley, Jr., Leo Considine, J. Frank Martin, and Frank C. Love, all of Oklahoma City, and T. Austin Gavin, of Tulsa, for plaintiffs in error.

Dudley, Hyde, Duvall & Dudley and Dennis Wright, all of Oklahoma City, for defendants in error.

WELCH, C. J.    The question is whether article 11, ch. 34, S. L. 1939, is constitutional.

The same provides:

"That whenever any school board shall, pursuant to this section or to any law of the state of Oklahoma, provide for transportation for pupils attending public schools, all children attending any private or parochial school under the compulsory school attendance laws of this state shall, where said private or parochial school is along or near the route designated by said board, be entitled equally to the same rights, benefits and privileges as to transportation that are so provided for by such district school board."

It is here sought to compel the school district officials, in conformity with said act, and by use of the public school bus and at the expense of the public school funds, to transport certain pupils on their way to and from a certain admittedly parochial school for the purpose of attending such school.

We examine the law to determine whether the trial court erred in its conclusions that the legislative act is violative of section 5, art. 2, of the Oklahoma Constitution.

Such constitutional provision is quoted as follows:

"No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such."

Plaintiffs in error base a goodly portion of their argument upon the premise

that the above-quoted provision of our Constitution says nothing about schools. The suggestion is made that therein lies a material distinction between such provision of our Constitution and certain constitutional provisions of other states which have there been considered in connection with similar questions. The net result of the suggestion would seem to be that the term "sectarian institution" does not include a sectarian or parochial school, leading to the ultimate result that our said constitutional provision did not inhibit the use of public funds directly for the maintenance of such a school.

We would not be inclined to accept that premise even if compelled to rely solely upon the phraseology of this particular provision. It seems to us that it would be commonly understood that the term "sectarian institution" includes a school or institution of learning which is owned and controlled by a church and which is avowedly maintained and conducted so that the children of parents of that particular faith would be taught in that school the religious tenets of the church.

When the interpretation suggested by plaintiffs in error leads to the result that the framers of our Constitution did not intend to prohibit the direct expenditure of public funds in support of sectarian schools, then the complete error of that contention is demonstrated. It is provided in section 5, art. 1, of the Constitution that the schools which the state is authorized and directed to establish and maintain shall be "free from sectarian control." We feel there is no doubt that section 5, art. 2, supra, prohibits the use of public money or property for sectarian or parochial schools.

It is urged that the present legislative act does not result in the use of public funds for the benefit or support of this sectarian institution or school "as such"; that such benefit as flows from these acts accrues to the benefit of the individual child or to a group of children as distinguished from the school as an organization. That argument is not impressive. A similar argument was said to be "utterly without substance" in Judd v. Board of Education, 278 N. Y. 200, 15 N. E. 2d 576. It is true this use of public money and property aids the child, but it is no less true that practically every proper expenditure for school purposes aids the child. We are convinced that this expenditure, in its broad and true sense, and as commonly understood, is an expenditure in furtherance of the constitutional duty or function of maintaining schools as organizations or institutions. The state has no authority to maintain a sectarian school. Surely the expenditure of public funds for the erection of school buildings, the purchasing and equipping and the upkeep of same; the payment of teachers, and for other proper related purposes is expenditure made for schools as such. Yet the same argument is equally applicable to those expenditures as to the present one.

If the cost of the school bus and the maintenance and operation thereof was not in aid of the public schools, then expenditures therefor out of the school funds would be unauthorized and illegal. Yet, we assume it is now acquiesced in by all that such expenditures are properly in aid of the public schools and are authorized and legal expenditures. If the maintenance and operation of the bus and the transportation of pupils is in aid of the public schools, then it would seem necessarily to follow that when pupils of a parochial school are transported such service would likewise be in aid of that school.

The expenditure of the public funds for the purpose here shown is confined to children attending school. Thus refuting any argument that such transportation is for the benefit of children generally and not for schools or that such transportation is furnished in regulating traffic within the police power, or primarily in promoting the health and safety of the children of the state. In Consolidated School Dist. v. Wright, 128 Okla. 193, 261 P. 953, it was held that transportation of pupils is an act done in carrying into effect the educational program contemplated by the Constitution and statutes.

The appropriation and directed use of public funds in transportation of public school children is openly in direct aid to public schools "as such." When such aid is purported to be extended to a sectarian school, there is, in our judgment, a clear violation of the above-quoted provisions of our Constitution. It is our duty only to read the applicable provisions of the Constitution and analyze them and apply to the question here the intent and purpose disclosed by the expressions in the Constitution. That document embraces the fundamental and basic law of the state, and courts and judges, like everybody else, are bound to follow it. "It is not the province of the courts to circumvent it because of private notions of justice or because of personal inclination," as was said in the Judd Case, supra.

The case of Oklahoma Railway Co. v. St. Joseph's Parochial School et al., 33 Okla. 755, 127 P. 1087, did not involve the expenditure of public funds and is merely an example of the exercise of the state's function of regulating transportation companies, and the case was one of construction of certain provisions of the railway company's contract and franchise. We do not believe that case is authority for the assertion that a private or parochial school is a part of the state's public school system or equivalent thereto, so as to authorize the maintenance thereof from public funds.

Our conclusion here is fully supported by the reasoning and conclusion in Judd et al. v. Board of Education et al., supra. Therein that court had before it a case involving the same essential facts and questions, and considered constitutional provisions of no material difference from our own in the instant respect. That court very ably collected and discussed most of the present available authorities on the several questions presented here, and in our view is acceptable as precedent herein.

Other authorities which support our present opinion and which are likewise relied upon in the Judd Case, supra, are State ex rel. Traub v. Brown, 6 Harr. (Del.) 181, 172 Atl. 835; Synod of Dakota v. State, 2 S. D. 366, 50 N. W. 632; State ex rel. Van Straten v. Milquet, School Treas., 180 Wis. 109, 192 N. W. 392; Williams et al. v. Board of Trustees, Stanton Common School Dist., 173 Ky. 708, 191 S. W. 507.

The brief for plaintiffs in error emphasizes the wholesomeness of the rule and policy of separation of the church and the state, and the necessity for the churches to continue to be free of any state control, leaving the churches and all their institutions to function and operate under church control exclusively. We agree. In that connection we must not overlook the fact that if the Legislature may directly or indirectly aid or support sectarian or denominational schools with public funds, then it would be a short step forward at another session to increase such aid, and only another short step to some regulation and at least partial control of such schools by successive legislative enactment. From partial control to an effort at complete control might well be the expected development. The first step in any such direction should be promptly halted, and is effectively halted, and is permanently barred by our Constitution.

The judgment is affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, and DAVISON, JJ., concur. GIBSON, J., dissents. ARNOLD, J., not participating.