STATE of Oklahoma for use and benefit of TOWN OF PRYOR, Oklahoma, a municipal corporation, Board of County Commissioners of County of Mayes, State of Oklahoma, a municipal corporation, and of State of Oklahoma, upon relation of Marlin W. WILLIAMS and Mary Alice Williams, residents, citizens and taxpayers of Mayes County, State of Oklahoma; and Marlin W. Williams and Mary Alice Williams, residents, citizens and taxpayers of Mayes County, State of Oklahoma, in their own behalf and in behalf of all other taxpayers similarly situated, Plaintiffs in Error,

v.

Mac Q. WILLIAMSON, Earl Ward and Bob Chambers, co-trustees of W. A. Graham Public Improvements Trust Estate, Defendants in Error.

No. 38256.

Supreme Court of Oklahoma.

Oct. 27, 1959.

Rehearing Denied Dec. 1, 1959.

George H. Jennings, Sapulpa, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., Wallace, Wallace & Owens, Miami, for defendants in error.

WELCH, Justice.

In this action plaintiffs sought a permanent injunction barring the defendants, Trustees of the W. A. Graham Improvements Trust Estate from contracting for and expending funds of the trust to construct the "W. A. Graham Memorial Chapel" upon grounds belonging to the State of Oklahoma, and occupied by the Whitaker State Orphans Home at Pryor, Oklahoma.

Background details as to the creation of this trust and as to its nature and character are set out in our former decisions reported in State ex rel. Williamson v. Longmire, 281 P.2d 949; Mitchell v. Williamson, 304 P.2d 314; and State ex rel. Williamson v. Evans, 319 P.2d 1112. We need only say here that the trustees hold substantial funds in said trust provided by the will of W. A. Graham and to be used for public improvements in Mayes County, Oklahoma. The powers and duties of such trustees are referred to in the above citations and in statutes 60 O.S.1955 Supp. §§ 391–397.

Within their stated authority the trustees, at the request and with the approval of the Governor of the State, the State Board of Public Affairs and the Superintendent of the Whitaker State Orphans Home, decided to use some of the funds of the Trust Estate to construct this chapel, and were about to contract therefor when stopped by temporary injunction in this action.

This memorial chapel when completed was to be owned by the State, to be maintained or managed by the State Board of Public Affairs and the Whitaker State Orphans Home, and to be used for and in connection with the Home for public assembly, and among other things, to provide a place for the voluntary worship of God by children of the Orphans Home, non-sectarian, non-denominational religious services might be conducted therein, but without requiring any child to attend any one of such services.

Upon trial the temporary injunction was dissolved, and plaintiffs' suit for permanent injunction was denied.

For reversal and to sustain their quest for injunction, plaintiffs contend that the expenditure of the public funds of this

Trust Estate, for this purpose would violate the provisions of Article II, Sec. 5 of the Oklahoma Constitution as follows:

"No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such."

And would violate the provisions of the First Amendment to the Constitution of the United States as follows:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

It would seem that a reading of these provisions would demonstrate that the construction or use of this proposed improvement does not violate these constitutional provisions; but in their insistence of a right to injunctive relief plaintiffs have cited decisions which we now notice.

Plaintiffs cite Connell v. Gray, 33 Okl. 591, 127 P. 417, 42 L.R.A.,N.S., 336, wherein this court held that the Board of Regents of the A. & M. College could not compel each registering student to pay a fixed fee to be used for the maintenance of the Young Men's and Young Women's Christian Associations; and Gurney v. Ferguson, 190 Okl. 254, 122 P.2d 1002, wherein this court held the State could not use public funds to provide transportation for pupils attending a parochial school thereby aiding the particular religious sect, or the particular institution with public funds; and Murrow Indian Orphans Home v. Childers, 197 Okl. 249, 171 P.2d 600, where this Court held that the State's contract to pay the Orphans Home for the care of certain dependent orphan children did not violate

these constitutional provisions; and National Surety Co. v. Sand Springs State Bank, 74 Okl. 176, 177 P. 574, where this court held that all public officers have only such authority as is conferred upon them by law, and that such authority must be exercised in the manner prescribed by law. And Shaw v. Grumbine, 137 Okl. 95, 278 P. 311, wherein this court referred to the general rules which guide the construction of constitutional provisions and the duty of public officers to act within their legal authority; and State ex rel. Williamson v. Evans, Okl., 319 P.2d 1112, where this Court set out that these defendant trustees are properly referred to as public officers, and that the money in this trust constitutes a type of public funds; and Vette v. Childers, 102 Okl. 140, 228 P. 145, where we held that the Legislature could not appropriate money to assist individuals in owning and operating a private warehouse business; and Veterans of Foreign Wars, etc. v. Childers, 197 Okl. 331, 171 P.2d 618, where this court held that the Legislature could not appropriate money to assist that organization or chartered corporation in carrying out its functions. We do not find anything in either of these decisions to support plaintiffs' contention.

Also cited is People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649, 2 A.L.R.2d 1338, wherein the Supreme Court of the United States condemned a program adopted by a Board of Education whereby public school pupils were released from certain of their school classes on condition that they attend religious classes conducted in the public school building. Also cited are Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711; Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, and Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878. We do not see how these federal decisions in any manner support the plaintiffs' claim to injunctive relief here.

It does not appear that any other court has had occasion to consider this exact question, that is, the asserted illegality of a non-sectarian, non-denominational chapel on the grounds of an institution owned and maintained by the State.

Sometimes the long existence of publicly declared principles, and the long uniform and public continuance of practices in line with such principles, known to all, without any question as to legality, might well be considered as argument against the merits of any such question. But be that as it may, as applied to the question now before us, there are compelling points in favor of the trial court's decision which are emphasized in defendants' brief.

 It is a well settled principle and philosophy of our Government that we should preserve separation of church and state, but that does not mean to compel or require separation from God. That would be directly contrary to cardinal precepts of the founding and preservation of our government, for it is well settled and understood that ours is a Christian Nation, holding the Almighty God in dutiful reverence. It is so noted in our Declaration of Independence and in the Constitution of every State of the Union. Since George Washington's first presidential proclamation of Thanksgiving Day each such annual proclamation reiterates the principles that we are such a Christian Nation. Our State Senate and House of Representatives spend public funds maintaining on duty a Chaplain, though this expenditure is not made in aid of any sect or denomination. The same is true as to each branch of our National Congress. State paid Chaplains are employed at the State Penitentiary at McAlester, and the State Reformatory at Granite. In the early days of our National existence the Continental Congress allowed, and General George Washington ordered a Chaplain for each regiment of our troops, and that practice of use of Chaplains has continued in all branches of our armed forces through the years. At West Point our National Government maintains a chapel and cadets are required to attend it. Our State maintains chapels at State Institutions such as the Griffin Memorial State Hospital at Norman, and the State Penitentiary at McAlester among others. A non-sectarian chapel was constructed at "Girls' Town," a State Institution, from funds raised by a state bond issue. At public expenditure we engrave on our coins, "In God We Trust" and print the same on currency. Our National Motto adopted by joint resolution of Congress is "In God We Trust." Our National Anthem closes with these words "In God is our Trust." Then why not maintain chaplains and, in appropriate places, chapels available for use in the worship of God by those who desire to do so?

The items mentioned in the preceding paragraph and other such circumstances too numerous to set out here are unmistakably and impressively authoritative in directing affirmance of the trial court judgment.

When we consider the language used in our Declaration of Independence and in our National Constitution, and in our Constitution of Oklahoma, wherein those documents recognize the existence of God, and that we are a Christian Nation and a Christian State, and when we note the encouragement therein given to the principle that we should recognize our dependence on God, and should promote worship of God, it is too difficult to see any constitutional provision indicating the slightest intention to prohibit the maintenance of chapels as they are maintained throughout our land, or to prohibit the construction of a chapel for use of the children in the Whitaker State Orphans Home at Pryor, Oklahoma.

W. A. Graham was a long time resident and outstanding citizen of Pryor. His city had long known and profited by his generosity. Of course he had through the years observed the operation of the Whitaker State Orphans Home. If he had specifically provided in his will for the gift of this chapel to, or for the use of, this Orphans Home, and if the location, size and architecture, and overall purpose met

the approval of the Home, the Governor of the State, and the State Board of Public Affairs, could the carrying out of this noble purpose have amounted to any illegality or any violation of the Constitution? We find none.

If this be considered in the nature of a gift by the defendant, trustees of this fund, acting within their discretion as authorized by W. A. Graham's will, and by law, our answer and our decision as to any demonstrated illegality would be and is the same.

The plaintiffs cite no authority which demonstrates to this court that the construction of this chapel should be stopped or its use barred by injunction, and their argument for such relief is not convincing.

The plaintiffs present some discussion on the point as to whether they have the right, or to be more exact, they present argument and authorities in support of their right to maintain this action, but since that right is not specifically challenged by the defendants, we do not discuss or decide that question.

We find that the judgment of the trial court denying the injunction sought by plaintiff is in all things correct, and it is affirmed.