463 P.2d 360 (1969)
Raymond N. LOWE, Corrinne R. Hill, W.A. Brooksby, Abe Brooks, G. Douglas Straton, Alfred Bloom, James Witzig, Claire L. Newport, Dirk P. Ten Brinke and E. Jean Ware, Respondents,
v.
CITY OF EUGENE et al., Defendants,
Eugene Sand & Gravel, Inc., Appellant.
Supreme Court of Oregon, In Banc.
Submitted on Petition for Rehearing November 28, 1969.
Decided December 19, 1969.
*361 William G. Wheatley, and Jaqua, Wheatley & Gardner, Eugene, and Warren Cameron, Olympia, Wash., for the petition.
Submitted on Appellant's Petition for Rehearing November 28, 1969.
GOODWIN, Justice.
In an action for a declaratory judgment determining the constitutionality of the issuance by the City of Eugene of building permits for the erection of a cross on citypark property, the circuit court for Lane County entered a decree requiring removal of the cross. An appeal to this court was argued January 6, 1969; on February 26, 1969, this court reversed and remanded, with three judges dissenting. A petition for rehearing, filed April 22, 1969, was allowed, and the cause was argued on rehearing June 2, 1969. On October 1, 1969, this court, with two judges dissenting, withdrew its earlier majority opinion and affirmed the trial court by adopting in substance the previous dissent as the opinion of the court.
In a new petition for rehearing, the parties who prevailed in the original opinion have listed a number of objections to the decision on rehearing. In granting the first rehearing and withdrawing the majority opinion of February 26, 1969, this court did not write a new opinion dealing point by point with the various arguments which had been discussed in the earlier majority *362 and dissenting opinions. Perhaps this economy of words has misled the petitioners. It cannot be fairly asserted, however, that this litigation has suffered at any stage from inadequate debate or want of deliberation. Nonetheless, the new petition asserts that "newly discovered material matter" should be considered, and that new legal arguments are relevant to the proper disposition of the case and should be heard in a third oral argument.
The petition challenges our disposition of this case on three principal grounds: an alleged mistake as to the facts, an alleged misreading of the federal cases which have construed the First Amendment to the United States Constitution,[1] and an alleged misreading of the Oregon Constitution, Art. I, §§ 2, 3, 4, 5, and 6.
First, as to the factual record, the petition is not well taken. The petition asserts that the only governmental act in support of the erection of the cross by private parties was the issuance of building and electrical wiring permits. This assertion overlooks the important fact that the city also turned over to private parties the city-maintained public land in which the cross was imbedded in concrete so that it would last, as one of the defendants testified, "forever." Other charges of factual inaccuracy in the opinion are equally unsupported by the record.
Turning to another argument urged in the petition, the proponents of the display seek to reopen the case for the purpose of introducing evidence that the public park atop Skinner's Butte in Eugene is a "War Memorial Park" and therefore is a fit site for a lighted cross regardless of reasons which might militate against such a display on other types of public lands or buildings. The petitioners' argument seems to be that because the park was dedicated to a secular purpose it must be assumed that a principally secular purpose motivated the city's participation in the display of the cross. This argument was made in the original trial, and all the evidence the petitioners now seek to have reconsidered was in the record which we examined when the case was first before us. The trial court decided that the secular purpose of the park dedication had no relevance to the city council's action then under review. We agree.
The war-memorial argument was never passed upon by the city council. The city's action in this case was taken, and defended during the trial below, primarily as an action taken by the city in response to the political power of the majority of the townspeople. At the trial, the city argued that the city council intended to aid the business community, some of whose members expressed a desire to display the cross in order to enhance the commercial exploitation of the principal Christian holidays: Christmas and Easter. The city's evidence tended to support this theory. At the same time, the record shows, a majority of the people in the community apparently viewed the display with approval because it reinforced their religious preference. These religious views also had been brought to bear upon the city government.
A majority of this court was of the opinion in October, and remains of the opinion now, that the allegedly commercial purposes behind the erection of the cross were, like the war-memorial argument, largely after-thoughts which were developed and embellished in response to this litigation.
The principal purpose which motivated the city council was its desire to conform to the desires of a majority of the citizens of the community, who conscientiously believed that their preferred religious symbol was entitled to preferential public display simply because the majority wished it so. Such a response to majority religious pressure is, of course, exactly what specific guarantees of rights in the state and federal *363 constitutions were designed to prevent.
If the hilltop in question were private property, the petitioners and their supporters would be constitutionally entitled to erect their cross under the free-exercise clause of the First Amendment. However, the land is public, and its custodian is a governmental subdivision. This is the decisive factor.
Public land cannot be set apart for the permanent display of an essentially religious symbol when the display connotes government sponsorship. The employment of publicly owned and publicly maintained property for a highly visible display of the character of the cross in this case necessarily permits an inference of official endorsement of the general religious beliefs which underlie that symbol. Accordingly, persons who do not share those beliefs may feel that their own beliefs are stigmatized or officially deemed less worthy than those awarded the appearance of the city's endorsement. While government can foster education in the history and cultural contributions of religions generally, and can act to protect the individual's right to his own personal expressions of religious opinion, the government has no business placing its power, prestige, or property at the disposal of private persons or groups either to aid or oppose any religion. Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); School Dist. of Abington Tp., Pa. v. Schempp, 374 U.S. 203, 222-223, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601, 86 A.L.R.2d 1285 (1962); People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649, 2 A.L.R.2d 1338 (1948).
It is, of course, far too late in the evolution of our federal constitution for the petitioners to overlook the protection which the religion clauses of the First Amendment give to nonreligious citizens and to citizens whose religious beliefs differ from those of the majority. Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). As it was expressed by Mr. Justice Jackson in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943):
"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein * * *."
The present situation is easily distinguished from the public cemetery in which private persons are allowed to designate whether small crosses shall be placed over the graves of their relatives. In the case of the public cemetery, the presence of the individual cross is clearly a matter of individual preference. It can be judicially noted that graves of non-Christians are not usually marked with Christian crosses.
Monuments to religiously motivated persons who become famous are also distinguishable from the type of display found in the case at bar. Statutes of noted religious persons are generally recognized as tributes to the individuals rather than to the religions for which they labored. Religion is, after all, a part of history. Consequently, a public monument to a famous American preacher or to a saint recognized by a church would perhaps be permissible, whereas a public monument depicting a biblical character or religious symbol would tend to sponsor the religion rather than to honor a famous person. In the case at bar, a large Latin cross which is lighted primarily during the Christmas season and Easter week is much more a testimonial to a religious faith than to a person. Those who argue that the cross is a mere secular symbol ignore 2,000 years of history.
Religious freedom and majority rule must live side by side. The majority, no matter how pure its intentions, has no right under our system of government to exert its political muscle to gain a preferred place for its testimony to its religious beliefs.
Lastly, the petition asserts that the majority of this court in adopting in substance *364 the views expressed in the dissenting opinion filed on February 26, 1969, has misread the Oregon Constitution. The petition points out, as "newly discovered matter," the obvious fact that the Oregon Constitution contains no specific language duplicating the so-called Establishment Clause of the First Amendment to the United States Constitution.
The petition cites evidence available in the 1857 records of Oregon's constitutional debates that the Bill of Rights of the Indiana State Constitution was used as a model for the Oregon Bill of Rights. Indiana's constitution contains an establishment, or "credal preference" clause.[2] Oregon's Bill of Rights does not. For some reason, our draftsmen did not carry the Indiana credal preference clause into our constitution. This unexplained omission might have constitutional significance if this court had rested its October 1, 1969, opinion in any degree upon the Indiana Constitution. It did not. The court was fully aware of the language of the Oregon Constitution.
In discussing the constitutional principle of separation of church and state, this court was not engaged in word-matching between other constitutions and the Oregon Constitution. While neither a specific "establishment" clause nor a "credal preference" clause appears in our state constitution, it is obvious that the founders of this state did not intend to permit the state to sponsor any particular religion. When the draftsmen of the Oregon Constitution provided for the free exercise of religion, they also prohibited the use of public funds to support any preferred religious institution. Oregon Constitution, Art. I, § 5.[3]
Petitioners argue, however, that the Oregon Constitution, in limiting its expression to a proscription against spending public "money" on religious institutions, by implication approved of turning over public land to them. This mechanistic interpretation of the state constitution is unwarranted. While differences between real and personal property of course have significance in a variety of legal contexts, these differences have no constitutional substance in a religious context.
We are, therefore, content to let stand our statement in the October 1 opinion, which grounded the decision on the merits in this case in part upon state as well as federal constitutional concepts. We did not intend to rely upon language which is not in our constitution. On the other hand, the language that is in the state constitution shows that the founders of this state did not intend to retreat from the federal position on separation of church and state, but rather intended to emphasize in their own words their own commitment to the doctrine of separation.
Every contention made by either side in this case has been fully examined, and a majority of this court remains convinced that the best interests of both government and religion are served by maintaining strict separation between the majority's political power and the majority's desire to foster its preferred religious faith. It is not the emblem of a religious belief which is objectionable under the state and federal constitutions; it is the enlistment of the hand of government to erect the religious emblem which offends the constitutions.
The petition for rehearing is denied.
DENECKE, Justice (dissenting).
I dissent upon the same ground as I dissented from the decision made after rehearing. Lowe v. City of Eugene, Or., 459 P.2d 222 (1969).
PERRY, C.J., joins in this dissent.
NOTES
[1] United States Constitution, Amendment 1:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
[2] Indiana Constitution, Art. I, § 4:

"No preference shall be given, by law, to any creed, religious society, or mode of worship; and no man shall be compelled to attend, erect, or support, any place of worship, or to maintain any ministry, against his consent."
[3] Oregon Constitution, Art. I, § 5:

"No money shall be drawn from the Treasury for the benefit of any religeous (sic), or theological institution, nor shall any money be appropriated for the payment of any religeous (sic) services in either house of the Legislative Assembly. "