Kent MEYER, a Resident Taxpayer of Oklahoma City, Oklahoma County, State of Oklahoma, on behalf of himself and all other similarly situated taxpayers, Plaintiff in Error,

v.

OKLAHOMA CITY, a municipal corporation, et al., Defendants in Error.

No. 43955.

Supreme Court of Oklahoma.

March 28, 1972.

As Amended May 15, 1972.

Rehearing Denied May 16, 1972.

Jack P. Trezise, Midwest City, for plaintiff in error.

Roy H. Semtner, Municipal Counselor, Irving L. Faught, Asst. Municipal Counselor, Oklahoma City, for defendants in error.

Warren Cameron, Seattle, Wash., amicus curiae, for affirmance.

DAVISON, Vice Chief Justice.

This is an appeal from a judgment of the District Court of Oklahoma County, Oklahoma, sustaining defendants' general demurrer to plaintiff's petition and dismissing plaintiff's petition. Plaintiff, a resident taxpayer of Oklahoma City, Oklahoma, on his own behalf and on behalf of other similarly situated taxpayers instituted this action against the City of Oklahoma City, a municipal corporation, its Mayor James H. Norick and City Manager Robert H. Oldland, defendants, to perpetually enjoin and restrain said defendants from maintaining upon a triangular lot (129 feet x 126 feet x 177 feet) located at the Fair Grounds on Oklahoma City land and facing Stagecoach Street, General Pershing Boulevard and Land Rush Street, a religious symbol alleged to be representative of the Christian Faith, in the form of a 50 foot high, Latin Cross designed to stand forever and which defendants allowed the Oklahoma City Council of Churches to install. Plaintiff alleges additionally that at Oklahoma City expense, the lot on which The Cross stands has been landscaped with flowers, shrubs and a lawn; The Cross has six electrical outlets, Oklahoma City pays the electricity for the use of the triangular lot; that The Cross was designed by a Presbyterian architect at the request of an employee of Oklahoma City who was then Secretary of the Oklahoma City Council of Churches and two Presbyterian pastors; that although said cross has been designed to "stand forever, it has been somewhat abandoned, is presently in a state of disrepair, and as such is an egregious insult to many Christians and followers of other faiths."

Plaintiff further alleges that all the above was done at the instigation of and by the Oklahoma City Council of Churches and by defendants in violation of Article 2, § 5 of the Oklahoma Constitution which says:

"No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such."

We should emphasize here that plaintiff alleges a violation only of the indicated part of the Oklahoma Constitution and does not allege a violation of the Four-

teenth Amendment to the Constitution of the United States embracing as it does the mandate of the First Amendment that "Congress [a state] shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." While without doubt certain violations of Art. 2, § 5 of the Oklahoma Constitution may be also violations of the First Amendment implications in the Fourteenth Amendment to the Constitution of the United States, we shall concern ourselves only with the meaning and application of Art. 2, § 5.

At the threshold of our consideration of whether plaintiff's petition states grounds for injunctive relief under Art. 2, § 5, of the Oklahoma Constitution, we must take note of two cases each involving an effort to enjoin the maintenance and display of a cross upon public property. Lowe v. City of Eugene, 254 Or. 518, 459 P.2d 222 (former opinion 254 Or. 518, 451 P. 117) and Paul v. Dade County, Fla.App., 202 So.2d 833. In the latter case decided in 1967 by the District Court of Appeals of Florida (Third District) the plaintiff, a non-christian, instituted action to enjoin Dade County from maintaining a lighted cross, a religious symbol, on the Dade County Court House during the month of December, 1966. The evidence reflected that this cross with other lights and decorations was originally placed on the court house at the request of members of the Miami Chamber of Commerce and that this was done in order to help decorate the streets of Miami and attract holiday shoppers to the down town area. There was a finding that the money for the maintenance and removal of the lights for the cross was donated by private persons and no public funds would be used in connection therewith. Notwithstanding this finding appellant argued that his [constitutional] rights were violated by maintaining a religious symbol on a public building which his taxes helped support. Since no money was taken from the public treasury Art. 1, § 6, of the Florida Constitution of 1885 did not come into play. The court held there

was no violation of plaintiff's "First Amendment Rights." Both the Supreme Court of Florida and the Supreme Court of the United States denied certiorari. Paul v. Dade County, 207 So.2d 690, 390 U.S. 1041.

In Lowe, the Oregon case, the trial court, in a suit for declaratory relief ordered the City of Eugene to remove from a public hill top park a neon-lighted concrete cross some 50 feet tall, which when lighted was visible for several miles over a major part of the City of Eugene. The cross was erected and maintained by the Eugene Chamber of Commerce without a permit at no expense to the City of Eugene. Later a permit was acquired. The fact that public expense was not involved precluded the application of Art. 1, § 5, of the Oregon Constitution. In fact no reference was made thereto by the Oregon Supreme Court. The Oregon Supreme Court first reversed then withdrew its first opinion and affirmed the judgment of the trial court presumptively on "First Amendment" grounds. The Oregon Constitution was not mentioned but the United States Supreme Court denied certiorari, nevertheless, because the judgment below rested on adequate state grounds.

The Florida and Oregon cases, reaching opposite result, although possessing factual similarities to the case before us, did not call into play, state constitutional provisions which like ours were designed to prevent sectarian bodies from making raids upon the public treasury or from subjecting public property to unauthorized sectarian uses.

Accordingly, we must decide upon the basis of our own prior decisions whether the maintenance of the cross, pictured as exhibit A to plaintiff's petition, upon public property, at slight but continuing public expense, constitutes a violation of Art. 2, § 5, of the Oklahoma Constitution.

In Connell v. Gray, 33 Okl. 591, 127 P. 417, we held that under Art. 2, § 5, which is self executing, the State of Oklahoma could not appropriate money for the sup-

port of the Young Men's and Young Women's Christian Association each of whom promulgated a system of religion and it follows that the Board of Regents of the Agricultural and Mechanical Colleges cannot be granted the power to levy a fee on every prospective student, as a condition precedent to entrance to be used for the maintenance of the Young Men's and Young Women's Christian Association. In Oklahoma Ry. Co. v. St. Joseph's Parochial, et al., 33 Okl. 755, 127 P. 1087, we held that Art. 2, § 5, did not prohibit the condition of a franchise to Oklahoma Ry. Co., requiring the Ry. Co. to issue reduced fare tickets to public school children, from applying to children attending parochial schools. We there said: "To say that the state is hostile to all schools except the public schools of the state or those carried on in state institutions is not borne out by the record." The grant of half fares was a grant to school children for a public purpose. We there pointed out in this connection: "It is beyond the power of the legislative agencies of this state, under our Constitution, to require a parent to send his child to the public schools if he affords him reasonable educational facilities at a sectarian, denominational, or private school."

In Gurney et al. v. Ferguson, 190 Okl. 254, 122 P.2d 1002, we held that a legislative enactment (Art. 11, ch. 34, S.L.1939), requiring the use of public property or the expenditure of public funds in transporting pupils of a sectarian school to and from such school, violates Art. 2, § 5. Board of Education for Ind. Sch. Dist., No. 52 v. Antone, Okl., 384 P.2d 911, involved the same question and the same provision of the Oklahoma Constitution with the same result as in Gurney v. Ferguson, supra.

In Murrow Indian Orphans Home v. Childers, State Auditor, 197 Okl. 249, 171 P.2d 600, we held that House Bill 519, 1945 S.L., p. 137, did not violate Art. 2, § 5. This legislative enactment authorized the Board of Affairs to make payment under contract to sectarian orphans' homes or institutions, which are not state owned, to defray the expense of maintenance and supervision of Oklahoma destitute and delinquent minor children who are in such homes or institutions. In distinguishing Gurney v. Ferguson we said that in Gurney public money was being spent to furnish a service to a parochial school for which no corresponding value was received. In referring to the religious aspect of the constitutional question we said: "It is not the exposure to religious influence that is to be avoided; it is the adoption of sectarian principles or the monetary support for one or several or all sects that the State must not do." In State v. Williamson, Okl., 347 P.2d 204, we held that the construction upon state-owned orphans home of a memorial chapel as a gift to the orphans home made by the trustee of a private trust was not a violation of Art. 2, § 5, even though maintained and operated by the orphan home, in view of the chapel's use for assembly purposes, where religious worship is not required, and when conducted is non-sectarian and non-denominational.

Our prior decisions make it clear that whenever public money or property became operative in an effective way to be appropriated, applied, donated or used for the use, benefit or support of any sect, church, denomination, system of religion or sectarian institution as such, the proscribed practices have been enjoined. But here the maintenance of this cross, as delineated and pictured in plaintiff's petition, cannot conceivably be said to operate for the use, benefit or support of any of the institutions or systems named in Art. 2, § 5. The cross is in a distinctly secular environment in the midst of persons in pursuit of distinctly secular entertainment. Notwithstanding the alleged sectarian conceptions of the individuals who sponsored the installation of this cross, it cannot be said to display, articulate or portray, except in a most evanescent form, any ideas that are alleged to pertain to any of the sectarian institutions or systems named in Art. 2, § 5. The alleged commercial setting in which the cross now stands and the com-

mercial atmosphere that obscures whatever suggestions may emanate from its silent form, stultify its symbolism and vitiate any use, benefit or support for any sect, church, denomination, system of religion or sectarian institution as such. On the basis of the foregoing we hold that plaintiff's petition did not state grounds for injunctive relief.

Affirmed.

All Justices concur.