

# The Attorney General of Texas

November 8, 1977

**JOHN L. HILL**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Joe Resweber
Harris County Courthouse
Houston, Texas   77002

Dear Mr. Resweber:

Opinion No. H-1087

Re:  Construction and
maintenance of a non-
denominational chapel
at a public hospital.

You inquire whether a nondenominational chapel may be built with private funds at a hospital owned and operated by the Harris County Hospital District.  If it may be built, you inquire whether the Hospital District may maintain it.

The Harris County Hospital District was created to provide medical and hospital care for needy inhabitants of the county.  Tex. Const. art. 9, § 4; V.T.C.S. art. 4494n; see Attorney General Opinion H-454 (1974).  In Attorney General Opinion M-1255 (1972), this office considered whether the Harris County Hospital District could employ chaplains. Noting the contributions chaplains could make toward dealing with the psychological and social aspects of illness, and the long history of chaplaincies in Texas state hospitals, the opinion concluded that the Hospital District had authority under its statute to employ them.  In our opinion, the Board of Hospital Managers could determine that the construction and maintenance of a hospital chapel would benefit patients and could accept donations for constructions of the chapel as "not inconsistent with proper management and objects" of the district.  See V.T.C.S. art. 4494n, § 15. However, as a public body financed by public funds, Arseneau v. Tarrant County Hospital Dist., 408 S.W.2d 802 (Tex. Civ. App. -- Fort Worth 1966, writ ref'd n.r.e.); Attorney General Opinion H-454 (1974), its actions must not violate state and federal constitutional provisions on the separation of church and state.

Article 1, section 6 of the Texas Constitution provides in part:

All men have a natural and indefeasible
right to worship Almighty God according to

the dictates of their own consciences.  No
man shall be compelled to attend, erect or
support any place of worship, or to main-
tain any ministry against his consent.

Article 1, section 7 provides as follows:

No money shall be appropriated, or drawn
from the Treasury for the benefit of any
sect, or religious society, theological
or religious seminary; nor shall property
belonging to the State be appropriated for
any such purpose.

Church v. Bullock, 109 S.W. 115 (Tex. 1908), the only relevant
case construing these provisions, does not indicate that con-
struction and maintenance of the chapel would violate them.  In
fact, the court noted approvingly that religious services were
at that time held in the chapel of the State University and in
other public buildings.  Several Attorney General Opinions on
similar questions indicate that the construction of a nondenom-
inational chapel for voluntary use in a public hospital would
not violate the Texas Constitution.  Attorney General Opinions
WW-1409, WW-1269 (1962); V-940 (1949).  In our opinion, the dis-
trict may build a nondenominational hospital chapel with donated
funds and may thereafter maintain the chapel without violating
article 1, sections 6 and 7 of the Texas Constitution.  The
courts of other states, construing similar provisions of their
own constitutions, have approved the donation of nondenomina-
tional chapels to public institutions.  Reichwald v. Catholic
Bishop of Chicago, 101 N.E. 266 (Ill. 1913) (chapel at county
poor farm); People ex rel. New York League for Separation of
Church and State v. Lyons, 21 N.Y.S.2d 250 (Sup. Ct. 1940) (prison
chapel); State v. Williamson, 347 P.2d 204 (Okla. 1959) (chapel
at state orphanage).

The First Amendment to the United States Constitution which
applies to the states by virtue of the Fourteenth Amendment pro-
vides in part that

Congress shall make no law respecting
an establishment of religion, or prohib-
iting the free exercise thereof. . . .

The United States Supreme Court has not dealt with a question
like the one you present; however, opinions dealing with
other issues have referred to circumstances under which the
government could build and maintain a nondenominational chapel
for voluntary use.  In School District of Abington Township v.
Schempp, 374 U.S. 203 (1963), the court determined that reli-

gious exercises in a public school were unconstitutional, but at the same time, some of the opinions indicated that such practices as providing chaplains and churches for persons in the military and in prisons were constitutional.  374 U.S. at 203, 213, 296-99, 306.  Justice Brennan in a concurring opinion stated that such practices conceivably violated the establishment clause, but probably could not be struck down without serious interference with religious liberties protected by the first amendment.  374 U.S. at 296-97.  In our opinion, the courts would hold that the hospital district may, consistently with the establishment clause, provide a chapel for voluntary use by its patients, who are cut off from other places of worship at a time when they may have particular need for the consolations of religion.

A four part test has been developed for determining whether the establishment clause has been violated:

> First, does the Act reflect a secular
> legislative purpose?  Second, is the
> primary effect of the Act to advance or
> inhibit religion?  Third, does the admin-
> istration of the Act foster an excessive
> government entanglement with religion?
> Fourth, does the implementation of the
> Act inhibit the free exercise of religion?

Tilton v. Richardson, 403 U.S. 672, 678 (1971); Attorney General Opinion H-511 (1975).  Where a free exercise claim is not at issue, the fourth part is sometimes dropped from the test. See, e.g., Committee for Public Education & Religious Liberty v. Nyquist, supra; Letter Advisory No. 128 (1977).  See also Attorney General Opinion M-1255 (1972) at 12; Annot., 36 A.L.R.3d 1256 (1971).

We believe the construction and maintenance of a hospital chapel for voluntary use reflects a secular purpose in that it will assist some patients to maintain peace of mind in the face of serious illness, thereby facilitating treatment.  See Attorney General Opinion M-1255 (1972) at 8.  Its primary effect is neither to advance nor inhibit religion but to avoid both of those effects.  We do not believe that the employment of chaplains and maintenance of a chapel in a public hospital foster excessive government entanglement with religion, in view of the need to permit the free exercise of religion by hospital patients. Finally, the provision of a chapel does not inhibit the free exercise of religion but in fact tends to prevent its inhibition. Since the chapel is to be nondenominational, it will not be used to promote one religion and inhibit another.

In our opinion, the Harris County Hospital District may constitutionally permit the construction of a nondenominational chapel with donated funds and may thereafter maintain it for voluntary use.  You have asked a legal question based on very few factual details, and we cannot pass on any fact situation beyond that presented here.

### S U M M A R Y

The Harris County Hospital District has statutory authority to construct and maintain a hospital chapel to be built with donated funds and may do so consistently with state and federal constitutional provisions on separation of church and state.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst