

# The Attorney General of Texas

December 1, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso. TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Mike Westergren
County Attorney
Nueces County Courthouse
Corpus Christi, Texas 78401

Opinion No. H- 1267

Re: Whether a religious statue can be erected on city property in Corpus Christi.

Dear Mr. Westergren:

You have asked our opinion on the following question:

> [Is it] constitutionally permissible for the City of Corpus Christi to allow use of a public area in the bay front for the erection of a statue of Christ at no expense to the city either for installation or maintenance in commemoration of the discovery of Corpus Christi Bay by dePineda in year 1519 without violating either the First Amendment to the United States Constitution or article I, sections 6 and 7 of the Texas Constitution regarding freedom of worship and appropriations for sectarian purposes?

You inform us that a group of private citizens approached the city council and tendered the gift of an 18-foot bronze statue of Christ to commemorate the naming of Corpus Christi Bay. The original proposal was to present the sculpture to the city at no cost if the city would provide a site, a twelve-foot base and maintenance. Substantial controversy and public discussion concerning the separation of church and state ensued, and the proposal was amended. The prospective donors indicated that they would form a nonprofit corporation to provide funds for the statue's installation, base and maintenance and would lease or purchase the site from the city for the statue's location. Under this proposal the city would have no connection with the statue other than selling or leasing land which would be used for the statue. Apparently, the only appropriate sites for the statue are now owned by the city.

Most questions of this sort require a determination of whether a secular purpose is served by installation and maintenance of the statue. See Allen v. Morton, 495 F.2d 65 (D.C. Cir. 1973) (government participation in Pageant of

Peace in a public park in Washington at which a creche was a part is not necessarily unconstitutional); State ex rel. Singelmann v. Morrison, 57 So.2d 238 (La. Ct. App. 1952) (statue of a Roman Catholic saint on public property upheld); Meyer v. Oklahoma City, 496 P.2d 789 (Okla.), cert. denied, 409 U.S. 980 (1972) (50-foot high cross at fairgrounds did not violate Oklahoma Constitution because of the secular environment in which it was erected); Eugene Sand & Gravel, Inc. v. City of Eugene, 558 P.2d 338 (Ore. 1976), cert. denied, 434 U.S. 876 (1977) (50-foot cross on city property served a secular purpose since it was dedicated and maintained as a war memorial); Lowe v. City of Eugene, 463 P.2d 360 (Ore. 1969), cert. denied, 397 U.S. 1042 (1970) (prior to passage of city charter provision designating cross as a war memorial, the cross was found to be a religious symbol which could not be maintained by the city); Anderson v. Salt Lake City Corp., 475 F.2d 29 (10th Cir.), cert. denied, 414 U.S. 879 (1973) (erection of a monolith containing the Ten Commandments near the entrance of the city/county courthouse found to be constitutional).

In this instance, however, there is to be no expenditure of public funds or public sponsorship. The extent of the city's involvement will be to sell or lease a parcel of land to a private corporation. After purchasing the land, the corporation will erect and maintain the statue. Assuming that all relevant statutes concerning the disposition of land are observed, there is no constitutional problem in selling or leasing public property to an individual even if he later uses the land for religious purposes. 1 Antieau, Modern Constitutional Law, § 4.13 (1969). See Fenske v. Coddington, 57 So.2d 452 (Fla. 1952) (the gift to the state of an industrial school did not pose an establishment of a religion problem when the donor retained ownership of a chapel located in one of the school buildings and maintained the chapel privately); cf. Paul v. Dade County, 202 So.2d 833 (Fla. Dist. Ct. App. 1967), cert. denied, 390 U.S. 1041 (1968) (a temporary string of lights in the shape of a cross put on the side of a county courthouse at no public expense to encourage Christmas shopping did not amount to an establishment of religion). We caution, however, that no specific lease has been presented to us, and we do not pass on whether a particular lease might not present entanglement problems. See generally Lemon v. Kurtzman, 403 U.S. 602 (1971); Levitt v. Committee for Public Education and Religious Liberty, 413 U.S. 472 (1973).

Accordingly, under the facts as you have presented them, i.e., that the city will sell or lease land to a private individual or corporation which will subsequently erect a religious statue, there is no violation of the constitutional guarantees against establishment of religion.

### S U M M A R Y

A city may sell or lease land to an individual even though the individual may subsequently intend to use the land for religious purposes.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn