Dear Superintendent Fisher,
The Attorney General is in receipt of your request for an opinion whereyou ask if the State Department of Education can provide for services andmaterials to private school children under Pub.L. 95-561, Title IV, asrequired by 406 for parts, B, C, and D.
Article I, Section 5 of the Oklahoma Constitution provides in part:
 "Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all children of the State and free from sectarian control;"
Article II, Section 5 of the Oklahoma Constitution provides:
 "No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit or support of any sect, church, denomination or system of religion, or for the use, benefit or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such."
Article II, Section 5, supra, is very broad and conclusive with regard to maintaining a separation of church and state and the appropriation of public funds.
A thorough search of the relevant case law reveals that the Supreme Court of Oklahoma has been obliged to interpret Article II, Section 5, supra, on only five occasions and it is evident from these decisions that our Court has been consistent in prohibiting the expenditure of public funds for the furtherance of any private or parochial interest. In the case of Gurney v. Ferguson, 190 Okla. 254, 122 P.2d 1002 (1939), the Court had before it the issue of the constitutionality of a legislative enactment authorizing the transportation of students of parochial schools on public school buses. In holding the Act unconstitutional as violative of Article II, Section 5, supra, the Court said:
 "It is true that this use of public money and property aids the child, but it is no less true that practically every expenditure for school purposes aids the child . . . The State has no authority to maintain a sectarian school . . ."
 ". . . we must not overlook the fact that if the Legislature may directly or indirectly aid or support sectarian or denominational schools with public funds, then it would be a short step forward at another session to increase such aid, and only another short step to some regulation and at least partial control of such schools by successive legislative enactment."
 "the first step in any such direction should be promptly halted, and is effectively halted, and is permanently barred by our Constitution."
In the case of Murrow Indian Orphans Home v. Childers, 197 Okla. 249,171 P.2d 600 (1946), the Court held that it was proper for the Board of Affairs to contract with a Baptist institution for the care of orphaned dependent children, which the State was obliged to support, since the State was receiving something in return for the expenditures and as such the money was not a gift or donation. In the case of State v. Williamson, Okla. 347 P.2d 204 (1959), the Court held that the construction of a non-denominational chapel on the grounds of a state owned orphans home, did not violate Article II, Section 5 of the Oklahoma Constitution.
Our Court was again faced with the problem of transportation of students of parochial schools on public school buses in Board of Education of Independent School District No. 52 v. Antone Okla., 384P.2d 911 (1963). In this case the Court followed Gurney supra, in holding that:
 "As we pointed out in Gurney v. Ferguson, supra, if the cost of school buses and the maintenance and operation thereof is in aid of the public schools, then it would seem to necessarily follow that when pupils of parochial schools are transported by them such service is an aid to that school. Any such aid or benefit, either directly or indirectly, is prohibited by the . . . Constitution of Oklahoma."
The only other relevant decision by our Court was that of Meyer v. Oklahoma City, Okla. 496 P.2d 789 (1972) wherein it was held that the construction of a 50 foot tall Latin cross on public property by the Oklahoma City Council of churches, resulting in a slight but continuous public expense in the maintenance thereof, was not unconstitutional. While this case did not involve any question as to the support of parochial or sectarian schools by the expenditure of public funds, the opinion citing Gurney, Murrow, Williamson and Antone, supra, did state the following:
 "Our prior decisions make it clear that whenever public money or property became operative in an effective way to be appropriated, applied, donated or used for the use, benefit or support of any sect, church, denomination system of religion or sectarian institution as such, the proscribed practices have been enjoined."
Federal monies disbursed under Title IV programs are deposited to separate accounts for State Department of Education with the State Treasurer. Thereafter, disbursements of these funds are on State warrants. Once federal funds are deposited with the State for use by State agencies, those funds become public funds and may not be expended in a manner inconsistent with State law.
Ever since Title IV programs were first initiated, the State of Oklahoma has certified to the Office of Education Oklahoma's inability to administer the federal program by reason of constitutional prohibitions, in the area of library resources and other forms of direct material assistance, Part B programs. Attorney General Opinion Number 65-302. Opinion No. 66-302 did, however, state that Oklahoma could administer the federal program in the area of classroom instruction, Part C programs, provided no transportation was provided and the children in private schools attended the special instruction at the public schools. The opinion rationalized State administration of all Part C programs on the theory of dual enrollment, that private school students would be permitted to enroll in public schools exclusively for the purpose of attending the special instructional programs offered under the Title IV, Part C grants.
Dual enrollment was first recognized, and approved, in Attorney General Opinion No. 66-163 in connection with whether a vocational-technical school district could admit private school students for enrollment in classes. An enrollee at a vocational-technical school would, under the facts outlined in the request, be a full time student of the vo-tech school when participating in a half day program of instruction. This, of course, is not "dual enrollment". The student was not to receive part of his or her vocational training in the public system and the other part in a private school. The Opinion, No. 65-163, as it related to the facts presented, was quite correct. There was no splitting of educational functions between public and private institutions nor any supplementation of private school curriculum by participation in programs in the public sector.
Dual enrollment as applied to the public school system in the con text of Title IV programs by Opinion No. 65-302 bears no resemblance to the situation presented in Opinion No. 65-163. Dual enrollment in the context of public school sponsored Part C programs is merely a fiction, the direct consequence of which is to provide instructional programs which the private schools would otherwise have to provide. It is, at least indirectly, providing financial support for private schools through the expenditure of public funds.
There is no statutory authority for dual enrollment of the type here considered. Private school children do not actually enroll in public schools, are not counted for state aid and are not in any other regard considered students of the public school system. The concept of dual enrollment provides no basis upon which to authorize the expenditure of public funds on private school students.
It is, therefore, the opinion of the Attorney General that the State ofOklahoma may not lawfully administer or otherwise provide educationalservices for private school children under Title IV programs. TheAttorney General will, therefore, certify that Oklahoma law requires theState to bypass all Title IV programs as they relate to providingeducational services to private school children. To the extent OpinionNo. 65-302 is inconsistent herewith it is withdrawn.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN PERCIVAL, ASSISTANT ATTORNEY GENERAL