The Attorney General is in receipt of your request for an official opinion wherein you ask, in effect, the following question: May the State Board of Vocational and Technical Education contract with a private or parochial post-secondary educational institution for such institution to offer a vocational training program. We are given to understand from the facts recited in your request letter that the State Board of Vocational and Technical Education (Board) has entered into contracts with two institutions of higher education for the schools to provide a course of instruction leading to an Associate Degree in Nursing. These schools are private colleges and one of the two is a private parochial institution of higher education. There is little question but that were we to confine ourselves to the authority of the Board under statutes, the Board would certainly be capable of lawfully entering into such contracts. The Board is legislative authorized 70 O.S. 14-103 [70-14-103](6) (1971), among its other powers and duties, to: "Enter into such agreements and contracts with the State Board of Education, boards of trustees of community junior colleges, boards of education of independent and dependent school districts, boards of education of area school districts for vocational and/or technical schools, private educational or training institutions, public or private industry, and boards of directors of community action programs, as may be necessary or feasible for the furtherance of vocational and technical training within this state." (Emphasis added) There are, however, general constitutional limitations upon the broad legislative grant of authority to the Board. Of principle concern here are the prohibitions of Okla. Const., Article II, Section5 and Article X, Section 15. Because the limitations expressed in Article X, Section 15 are of potential application to both programs, it shall be the initial topic of discussion. The second independent clause of Article X, Section 15 states: ". . . nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation." The Oklahoma Supreme Court considered a similar, although not identical, contract in Children's Home and Welfare Ass'n v. Childers, 197 Okl. 243, 171 P.2d 613 (1946). The state had entered into a contract under which it committed to pay the Association a specific amount per child for every underprivileged or orphaned child in its care. The question presented was whether this expenditure of public funds was a donation, gift or "otherwise" within the contemplation of Article X, Section 15. The Court concluded its opinion with the following discussion: "This court had occasion to define the term 'gifts' which fall under the ban of sec. 15 above, which definition is not contrary to our view herein. In Hawks v. Bland,156 Okl. 48, 9 P.2d 720, 722, we said that such gifts were 'gratuitous transfers of the property of the state voluntarily and without consideration.' Following this though we conclude that where the state receives property or service in return for the payment of its money, even though such payment by the state be voluntary in the sense that the contract whereunder the money was paid was voluntarily entered into, it is not to be treated as a gift. See also Carter v. Thomas, 172 Okl. 558, 46 P.2d 460. It is not necessary to enter into an extended discussion of the service that is rendered to the State of Oklahoma by Association in taking and keeping and caring for the orphan children involved in this contract, but to the extent that Association renders this service to the State of Oklahoma it is furnishing the state a valuable consideration sufficient to support the payment to Association by the State of the State's money raised by public taxes." The care and nurture of orphaned and dependent children is, of course, a duty laid upon the State by the Constitution. See Okla. Const., Article XXII, Section 1 and Article XXV, Section 1. The support of training programs for nurses, although certainly a most worthwhile undertaking, is not a constitutionally mandated duty of the State. Nevertheless, providing programs of nurse and health professional training is a legitimate undertaking for the State. To the extent there may be a demonstrated need for such programs and the State is not able as a matter of practicality to provide the program through one of its traditional educational agencies, the State may contract with private enterprise to provide the service needed. Any contract entered into must comply with the other requirements of state law regulating government contracts. One of the two institutions contracting with the Board for a nurse training program is a private sectarian institution of higher education. The Oklahoma Constitution, Article II, Section 5 states: "No public money or property shall ever be appropriated, applied, donated, or used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such." The phrase "sectarian institution" employed in Article II, Section 5 includes sectarian or parochial schools. Gurney v. Ferguson, 190 Okl. 254, 122 P.2d 1002 (1941), app. dism'd 317 U.S. 588, 63 S.Ct. 34, 87 L.Ed. 481, reh. den. 317 U.S. 707, 63 S.Ct. 153, 87 L.Ed. 564. In Gurney v. Ferguson, supra, the Court said that the use of school district buses to transport students of a parochial school was a use of public property in support of a sectarian institution. With one exception that will hereafter be discussed, the State Supreme Court has consistently held to the principles first presented in Gurney v. Ferguson, supra. Another school bus case!, Board of Education of Ind. Sch. Dist. No. 52 v. Antone, Okl., 384 P.2d 911
(1963), contained the following discussion: "As we pointed out in Gurney v. Ferguson, supra, if the cost of school buses and the maintenance and operation thereof is in aid of the public schools, then it would seem to necessarily follow that when pupils of parochial schools are transported by them such service is in aid of that school. Any such aid or benefit, either directly or indirectly, is prohibited by the . . . Constitution of Oklahoma." In another Article II, Section 5 case, Meyer v. Oklahoma City, Okl., 496 P.2d 789 (1972), the Court summarized the consistent thread of its decision when it said: "Our prior decisions make it clear that whenever public money or property became operative in an effective way to be appropriated, applied, donated or used for the use, benefit or support of any sect, church, denomination system of religion or sectarian institution as such, the proscribed practices have been enjoined." In recent Attorney General's Opinion No. 79-060, 11 Okl. Op. A. G. 104, the limitations of Article II, Section 5 on the State were discussed in the context of the use of state and federally funded grant programs for public and private schools. Attorney General's Opinion No. 79-060, Gurney v. Ferguson, supra, and Board of Education of Ind. Sch. Dist. No. 52 v. Antone, supra, all involved a unilateral extension of support by the State through the expenditure of public funds or the use of public property for the benefit of sectarian institutions. Factually closer to the present situation is Murrow Indian Orphans Home v. Childers, 197 Okl. 249, 171 P.2d 600 (1946). Murrow Indian Orphans Home, supra, was a companion case with Children's Home and Welfare Ass'n v. Childers, supra. Objection was raised to the state practice of contracting with the sectarian orphan's home an Article II, Section 5 grounds as well as Article X, Section 15. The Court disposed of the Article X, Section 5 objections on the basis of its decision in Children's Home and Welfare Ass'n, supra. Without question Murrow Indian Orphans Home, supra, was a departure by the Court from its consistently stated adherence to the restrictions of Article II, Section 5. The Court permitted the appropriation of state funds to be paid under contract to a sectarian institution for the care of needy and orphaned children. The Court concluded its opinion in the Murrow Indian Orphans Home case, with the following statements: "When the stipulated facts before us are considered in the light of these principles, we are of the opinion that the objections voiced to the payment of these claims fail. The State is fulfilling a duty to needy children. The institution can render a service that goes far toward the fulfillment of this duty, and for a compensation that is a matter of contract and public record. The matter of the wisdom of the terms of these contracts is for the Legislature and the agency upon which it thrusts the performance of its commands, and so long as they involve the element of substantial return to the State and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the State, there is no constitutional provision offended." (Emphasis added) The Court's decision in Murrow Indian Orphans Home, supra, was expressly made to turn on the State's constitutional duty to care for needy or orphaned children. Okla. Const., Article XXII, Section 1 and Article XXV, Section 1. Under the Court's opinion the State may discharge its constitutionally mandated responsibility through the mechanism of a sectarian institution with which it has a contract for requisite services. Although an admittedly legitimate function of state government and certainly a praise-worthy enterprise, the vocational education of nursing professionals is not a mandatory duty of state government required by the State Constitution. Board's activities in this area are an optional governmental service the State chooses to provide. It does not follow that permissible modes of conduct for state government in the discharge of its mandatory duties may also be pursued to implement optional social policy. The State through its public system of higher education and by contract with private nonsectarian institutions of higher education provides programs for the training and professional education of nurses. A contract with a sectarian institution to provide the same public service would necessarily result in the appropriation and use of public money, directly or indirectly for the use, benefit, or support of the contracting sectarian institution. It is, therefore, the official opinion of the Attorney General that your question be answered as follows: 1. The State Board of Vocational and Technical Education may contract with private nonsectarian post-secondary educational institutions for such institutions to offer a vocational training pro gram. 2. The State Board of Vocational and Technical Education may not contract with private sectarian educational institutions for such institutions to offer a vocational training program as to do so would violate Okla. Const., Article II, Section 5. (John F. Percival)Disposition: ** SEE: OPINION NO. 80-166 (1980) **